### Killington, Ltd. v. State of Vermont and Town of Mendon

[668 A.2d 1278]

No. 94-516

Present: **Gibson, Dooley and Morse, JJ., Bryan, Supr. J. and Morris, D.J., Specially Assigned.**

Opinion Filed October 13, 1995

*Frank P. Urso*, Killington, *John J. Zawistoski* and *Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, and *Michael M. Berger* of *Berger & Norton*, Santa Monica, California, for Plaintiff-Appellee.

*Jeffrey L. Amestoy*, Attorney General, and *Ron Shems, John H. Hasen* and *Mark J. Di Stefano*, Assistant Attorneys General, Montpelier, for Defendant-Appellant State of Vermont.

*Nancy Corsones* and *Christopher Corsones* of *Corsones & Corsones*, Rutland, for Defendant-Appellant Town of Mendon.

*Lewis Milford, Richard S. Emmet* and *Elizabeth R. Thagard*, Montpelier, for Amicus Curiae Conservation Law Foundation.

*Patrick W. Hanifin* and *Stephen S. Ostrach* of *New England Legal Foundation*, Boston, Massachusetts, for Amicus Curiae Vermont Farm Bureau Federation.

**Morse, J.** The State of Vermont and the Town of Mendon appeal the superior court's ruling that Killington, Ltd.'s regulatory taking claim is ripe for litigation. Killington claims that acts and decisions by the State and Mendon, taken individually and together, constitute a regulatory taking of its land. The trial court granted an interlocutory appeal to this Court on the ripeness issue. We reverse.

## I. *State's Actions*

### A.

In 1982, Killington bought for development as a ski area 1600 acres of land in Parker's Gore East in Mendon. The land was intended as an extension to Killington's existing ski operation. In early 1986, Killington applied to the District I Environmental Commission for a permit to build a four-acre snowmaking pond on its land next to the Parker's Gore East land. The Commission ordered Killington to submit a master plan showing its intended development of the Parker's Gore East area. Killington declined the request, and sought a preliminary injunction in Rutland Superior Court to compel a merits hearing without a master plan. The court dismissed Killington's complaint due to its failure to exhaust administrative remedies.

Killington then appealed the Commission's master plan order to the Environmental Board, which ordered the Commission to hold a factual hearing on the scope of Killington's application. After hearing, the Commission again decided that absent a master plan from Killington, the Commission could not adequately determine the

cumulative impacts of the snowmaking pond. The Commission found that Killington intended to use the pond to service new ski runs to be developed in Parker's Gore East. Operating under this assumption, the Commission denied Killington's Act 250 application under criterion 8A because the project would endanger necessary bear habitat.[1] In its order, the Commission indicated that it would reconsider Killington's application if Killington showed that it had no other viable sources of water for snowmaking and that the ski resort would be financially jeopardized by limiting the size of its snowmaking facilities. The Commission further noted that future applications for development in Parker's Gore East would have to contain an impact study and mitigation plan demonstrating that the development would not significantly disturb the critical bear habitat.

Killington appealed to the Board for a de novo hearing under 10 V.S.A. § 6089(a)(3). The Board ruled initially that Killington's pond proposal should be considered independently rather than as a part of a future ski development of Parker's Gore East. The Board concluded, nevertheless, that the pond would impact wildlife resources in Parker's Gore East. It found that Parker's Gore East contains a rare stand of beechnut-producing trees, a wetland area, and other trees that sustain twenty to thirty black bears, and that the pond would destroy the wetland and imperil the beechnut-producing trees, compromising a necessary bear habitat.

The Board then denied Killington's application under criterion 8A, finding that (1) Killington presented no credible evidence of public benefit to outweigh the public loss; (2) Killington lacked mitigation proposals for the replacement of lost wetlands and the preservation of the beechnut-producing trees; and (3) Killington failed to demon-

---

[1] Criterion 8A states:

> A permit will not be granted if it is demonstrated by any party opposing the applicant that a development or subdivision will destroy or significantly imperil necessary wildlife habitat or any endangered species, and
>
> > (i) the economic, social, cultural, recreational, or other benefit to the public from the development or subdivision will not outweigh the economic, environmental, or recreational loss to the public from the destruction or imperilment of the habitat or species, or
> >
> > (ii) all feasible and reasonable means of preventing or lessening the destruction, diminution, or imperilment of the habitat or species have not been or will not continue to be applied, or
> >
> > (iii) a reasonably acceptable alternative site is owned or controlled by the applicant which would allow the development or subdivision to fulfill its intended purpose.

10 V.S.A. § 6086(a)(8)(A).

strate its lack of acceptable alternative sites for snowmaking facilities. Killington appealed the Board's decision to this Court, and we held that the Board's findings supported its conclusions. *In re Killington, Ltd.*, 159 Vt. 206, 216–17, 616 A.2d 241, 248 (1992).

In November 1986, Killington filed a second Act 250 application with the Commission, this time seeking to harvest timber on approximately 700 acres of land above 2500 feet in Parker's Gore East. The Commission found that although the logging project would comply with criteria 1–7 and 9–10, it would endanger necessary bear habitat, triggering analysis of criterion 8A and its subcriteria. The Commission concluded that Killington could log Parker's Gore East if it implemented mitigation measures to protect the bears' food source and travel corridor; otherwise, the permit was denied.

On appeal, the Board affirmed the Commission's finding that the logging operation threatened the bear habitat, and denied the application because Killington had not provided either a master plan for the operation or any mitigation proposals. The Board indicated that it would reconsider the application if Killington provided information as to the timing of the operation, the size and shape of the clear cuts, the location of the cuts, and the identification of trees that would be retained. Killington did not appeal the Board's decision, nor did it provide the Board with the requested information.

In July 1993, Killington sought a permit to extend the construction completion date for snowmaking facilities on ski trails already located in Parker's Gore East. The snowmaking facilities had been approved in three permits issued before the Commission and Board determined that a necessary wildlife habitat existed in the area, but apparently Killington had not begun construction of the permitted snowmaking facilities. Noting that the Board had found Parker's Gore East to contain a necessary bear habitat, the Commission ruled that Killington could construct snowmaking facilities in that area only if Killington prohibited skiing on trails there after April 1 of every year. The condition was not acceptable to Killington, and consequently the permit was denied. No appeal was taken to the Board.

Killington brought the present action in August 1993. Killington claims that previous decisions by the Commission, Board, and this Court bar Killington from using the land for its only reasonable, economically viable use — skiing. Consequently, Killington seeks monetary compensation from the State and Mendon under the

takings clause of Chapter I, Article 2 of the Vermont Constitution.[2] The State and Mendon moved to dismiss the case pursuant to V.R.C.P. 12(b)(1) and (6), arguing that the court lacked subject matter jurisdiction because Killington's claim was not ripe, and that Killington had failed to state a claim upon which relief could be granted. Killington filed a motion for summary judgment. The trial court denied the motions.

## B.

■   Whether a regulatory takings claim resulting from an Act 250 denial is ripe for litigation must be determined by the two-part test set out in *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). See *In re Sherman Hollow, Inc.*, 160 Vt. 627, 630, 641 A.2d 753, 756 (1993) (mem.) (citing *Williamson* for proposition that regulatory takings claims are not ripe for review until applicant has obtained final decision). The first part requires the plaintiff to have obtained a final decision regarding the application of the government regulations to plaintiff's property. *Williamson*, 473 U.S. at 186; see also *In re Pelham North, Inc.*, 154 Vt. 651, 652, 578 A.2d 124, 124 (1990) (mem.) (Environmental Board's decision voiding land use permit is not ripe until Board finally disposes of subject matter). The second part tests whether the plaintiff has utilized state procedures for obtaining just compensation. *Williamson*, 473 U.S. at 186. It is undisputed that by initiating this action, Killington is utilizing state procedures for obtaining just compensation. Therefore, we need address only the finality requirement of the *Williamson* test.

In *Williamson*, a developer claimed that the county zoning commission's denial of his application for a residential subdivision constituted a regulatory taking. The Court held that the developer's claim was not ripe, reasoning that because the developer had not pursued available variances, the planning commission had not rendered a final, reviewable decision. *Id.* at 193–94. The Court stated that a final decision must be one that "conclusively determine[s] whether [the developer] will be denied all reasonable beneficial use of its property." *Id.*

Likewise, in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), the owners of Grand Central Station sought a

---

[2] Chapter I, Article 2 of the Vermont Constitution reads as follows: "That private property ought to be subservient to public uses when necessity requires it, nevertheless, whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money."

permit from the New York City Landmarks Preservation Commission to construct a fifty-five-story office building above the existing facade of Grand Central Station. The Commission denied the application, but left open the possibility of future development by the owners. In rejecting the owners' takings claim as unripe, the Supreme Court reasoned that because the owners had not sought "approval for the construction of a smaller structure, we do not know that appellants will be denied any use of any portion of the airspace above the Terminal." *Id.* at 136–37.

Here, the Commission and the Board have indicated that, notwithstanding the Board's designation of Parker's Gore East as critical bear habitat, once reasonable mitigation measures are implemented, commercial skiing would be permitted in the area. Further, the Board did not unconditionally deny either Killington's application to log in the area or its application to build a snowmaking pond on adjacent land. Instead of submitting a master plan or a mitigation proposal regarding these applications, Killington elected to bring this lawsuit. By doing so, it is prematurely asking the superior court to speculate as to whether viable economic and productive use of its property has been denied. See *Southern Pacific Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 504 (9th Cir. 1990) (ripeness doctrine is intended to avoid courts speculating as to what possible proposals plaintiffs might have filed with government and how government might have responded to those imaginary applications); see also *Hoehne v. County of San Benito*, 870 F.2d 529, 533 (9th Cir. 1989) (plaintiff in takings action bears "high burden" of proving that final decision has been made).

Killington claims, however, that previous decisions by the Board and this Court render any additional administrative proceedings futile. We disagree. In an analogous case, *Southview Assocs. v. Bongartz*, 980 F.2d 84 (2d Cir. 1992), a developer sought to build a 33-unit subdivision near Stratton and Jamaica, Vermont. During Act 250 proceedings, the Board discovered that the proposed development was situated within a 280-acre deeryard. The Board denied the application, but indicated that a reapplication containing appropriate mitigation measures would be accepted. Rather than reapply, the developer, like Killington here, filed a takings claim. The Second Circuit found that the developer's claim did not satisfy the *Williamson* requirements, and dismissed the developer's futility argument because the Board had left the door open to less intrusive development of the property. *Id.* at 99; see *American Savings & Loan Ass'n v. County of Marin*, 653 F.2d 364, 371 (9th Cir. 1981) (takings

plaintiff has "heavy burden" of showing that compliance with local ordinances would be futile). In its findings here, the Board indicated that it would permit Killington to log in the Parker's Gore East area if Killington adopted available mitigation measures. Moreover, while refusing to extend Killington's prior permit for snowmaking facilities in the area, the Commission indicated that snowmaking facilities would be permitted in Parker's Gore East if Killington agreed to prohibit skiing there after the first of April. Killington, however, did not satisfactorily mitigate its development plans to minimize impacts on critical areas of the bear habitat. Much like the developer in *Southview*, Killington suffers from an "our-way-or-no-way" attitude.[3]

Killington seeks to distinguish *Southview* by pointing out that almost all of its Parker's Gore East land is above 2500 feet and thus will be subject to Act 250 review regardless of how it seeks to develop the land. In rejecting the developer's claim in *Southview* that a final decision had been made regarding its property, however, the Second Circuit noted that it was likely that some development would be permitted "even if Southview proposes development that requires further Act 250 review." *Southview*, 980 F.2d at 99.

Killington responds by contending that any permit application would fail under criterion 8A even if it adopted the Board's suggestions. Killington believes that because the Board has previously determined that the proposed developments violate 8A's public benefit subcriteria, the Commission would reject any future application by Killington no matter what mitigation measures were offered. Killington misunderstands the impact of mitigation undertakings. If Killington were to adopt mitigation measures reducing or eliminating the environmental harm posed by its earlier proposals, the economic and recreational benefit of a new proposed development might well outweigh any negligible impact on the bear habitat. But Killington has elected not to institute mitigation measures recommended by both the Board and the Commission. Until the Commission and Board have had an opportunity to rule on an application addressing those

---

[3] Amicus curiae American Federation of Farmers states that Killington did not invite the bears onto its land, and, comparing the bears to the cable box on Ms. Loretto's roof, see *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 436 (1982) (installation of cable equipment was permanent physical taking), argues that a physical taking has occurred, in which case Killington need not meet the ripeness test. Neither common sense nor case law supports this argument. The hallmarks of a physical taking are "*absolute* exclusivity of the occupation, and *absolute* deprivation of the owner's right to use and exclude others from the property." *Southview Assocs. v. Bongartz*, 980 F.2d 84, 93 (2d Cir. 1992). Neither of these requirements is met here. Cf. *id.* at 94–95.

mitigation measures and to determine conclusively the extent to which development will be permitted in the area, the superior court is without jurisdiction to review Killington's takings claim. See *Southern Pacific*, 922 F.2d at 502 (if takings claim is unripe because plaintiffs have failed to obtain final and authoritative determination of type and intensity of development legally permitted on subject property, court lacks subject matter jurisdiction, and complaint must be dismissed).

## II. *Mendon's Actions*

### A.

As noted previously, Killington acquired the Parker's Gore East land in 1982. Shortly thereafter, Killington sought the Mendon Planning Commission's approval to construct alpine ski runs and lifts on that property. In April 1983, the Planning Commission approved such a proposal. Later that year, however, the Mendon Zoning Board of Adjustment denied Killington's application for the necessary permits to construct a two-triple-chairlift system and snowmaking facilities, reasoning that the proposed project would be incompatible with the existing residential and agricultural uses designated by the then-current zoning ordinance. Killington withdrew its appeal of that decision, and the project was never started.

In June 1990, Mendon adopted a new zoning ordinance that limited all activity in Parker's Gore East over 2500 feet to forestry and noncommercial recreational uses. Town of Mendon Zoning Ordinance § 529 (1990). Killington never applied for a zoning permit to build the ski area under the new ordinance, nor did it seek a variance authorized under § 350 of the zoning ordinance and 24 V.S.A. §§ 4464, 4468. In April 1994, after Killington filed this action, Mendon amended its zoning ordinance to permit commercial skiing in part of Parker's Gore East.[4]

### B.

Killington challenges Mendon's zoning regulations. Zoning regulations may be challenged as a taking either on their face or as applied

---

[4]Because we conclude that Killington's claim against Mendon is not ripe, we find it unnecessary to address the effect of Mendon's 1994 amendments to its zoning regulations on Killington's takings claim. We do not decide whether Mendon's 1990 regulations constituted a temporary taking.

to an owner's property. See *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494–95 (1987); *Southern Pacific*, 922 F.2d at 502–03. A facial taking means that the mere adoption of land use regulations constitutes a taking of the property. J. Shonkwiler and T. Morgan, Land Use Litigation § 3.01 (1986). A facial challenge is ripe for judicial review upon the adoption of the regulation. *Id.* When the regulation is challenged as applied to the property, the focus of the claim is on how the administration of the regulation impacts the property. *Id.* An "as-applied" challenge is not ripe for review until the property owner has sought administrative relief through government procedures. *Id.*

Killington argues that because it is making a facial challenge to Mendon's zoning regulations, the ripeness issue is moot. See *Southern Pacific*, 922 F.2d at 507 (ripeness doctrine applicable to as-applied challenges). Had Killington sought merely to invalidate the regulation, we might agree. Killington's request for monetary relief, however, is inconsistent with a facial challenge to the ordinance. See *Weissman v. Fruchtman*, 700 F. Supp. 746, 753 (S.D.N.Y. 1988) (facial challenges are primarily for benefit of society and normally result in injunctive or declaratory relief). Because Killington seeks monetary damages from an application of the zoning ordinance to its property in Parker's Gore East, we agree with Mendon that Killington is challenging the 1990 regulations as applied.

Killington contends that a facial attack is merely "one made by a plaintiff who claims that there is no way the legislation can be applied to *him* that passes constitutional muster." Even assuming we accepted this definition, Killington cannot claim that Mendon's 1990 zoning ordinance could never be applied to Killington in a manner that would permit productive use of its property. The ordinance contains a variance procedure that could have permitted development of the land, but Killington never availed itself of that procedure. By the same token, Killington cannot claim that Act 250's criterion 10, which requires that permit applications be in compliance with local zoning ordinances, precluded any possibility of it obtaining an Act 250 permit for development of its Parker's Gore East property that was above 2500 feet.

Having concluded that Killington is challenging Mendon's zoning ordinance as applied, we consider the ripeness of that claim. Killington claims that Mendon's 1990 zoning ordinance deprived it of all practical use of the Parker's Gore East land. Since 1983, however, Killington has not sought permits from Mendon for any use of the

land. Killington's only actions have involved its Act 250 applications, in which the Commission and Board specifically found Killington's proposed projects to be in compliance with local zoning ordinances. To have a ripe takings claim against Mendon, Killington must first exhaust all of its administrative remedies, including variance procedures. *Williamson*, 473 U.S. at 187–88; accord *Houston v. Town of Waitsfield*, 162 Vt. 476, 481, 648 A.2d 864, 867 (1994) (takings argument not ripe where plaintiff failed to seek variance). Since 1983, Killington has not pursued any administrative remedies with Mendon. Consequently, Killington's taking claim against Mendon is not ripe.

Killington contends, however, that Mendon's 1983 denial of its application to build a ski area in 1983 amounts to a taking of its property. We reject Killington's attempt to bootstrap a ten-year-old unappealed decision into its argument that Menden's 1990 zoning ordinance and the State's Act 250 decisions have effectively taken its property. Killington's belated use of the 1983 decision in its takings claim carries little weight. First, Killington failed to appeal that decision. Cf. *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 627, 572 A.2d 925, 930 (1990) (24 V.S.A. § 4472(b) allows plaintiff to attack constitutionality of zoning ordinance without appealing zoning board's decision to superior court, but this exception does not authorize collateral constitutional attack on application of ordinance to particular facts). Second, Killington failed to seek a variance under the 1990 zoning ordinance or, for that matter, to file any permit application with the Town in the ten years between the decision and its takings suit. The project-specific 1983 decision, which was made under a substantively different ordinance, has little, if any, relevance to Killington's takings suit. The decision did not preclude Killington from seeking a variance later based on its response to resource management concerns in Mendon's 1990 ordinance. See *In re Carrier*, 155 Vt. 152, 158, 582 A.2d 110, 113 (1990).

## III.

"A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 348 (1986). At this point, the superior court would have to speculate on the nature and extent of permitted development in Parker's Gore East because there has been no final determination on those issues. Indeed, the actions and decisions of Mendon and the State suggest that less intensive

development that is sensitive to critical areas and resources within the bear habitat would be permitted. Contrary to Killington's claims, the Board's findings and decision indicate that bears and people can coexist under certain circumstances, circumstances that appear to be feasible given the nature of Killington's enterprise. Rather than explore those possibilities, Killington has prematurely filed a takings claim before a definitive final decision has been rendered determining allowable property uses. Once such a decision is rendered, assuming Killington persists with its takings claim, a court can determine if the permitted uses are economically viable. Until that time, the superior court is without jurisdiction to hear the claim.

*Reversed and remanded.*