## Gregory T. Chioffi v. City of Winooski, et al.

[676 A.2d 786]

No. 95-169

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 15, 1996

38

*Paul D. Jarvis* of *Jarvis and Kaplan,* Burlington, for Plaintiff-Appellant.

*William M. O'Brien* and *Kristin C. Wright* of *O'Brien Law Offices,* Winooski, for Defendants-Appellees.

**Dooley, J.** Plaintiff Gregory T. Chioffi owns land and a burnt-out building in the City of Winooski, and was denied a zoning permit to reconstruct the building. Eventually, after an appeal to this Court, the superior court reversed the city zoning board and granted plaintiff a variance to build a duplex. In a separate action, plaintiff claims a taking occurred during the time the permit was denied, because he was deprived of the use of his property, and seeks compensation for the lost use during the regulatory delay. The superior court held that no taking occurred, and granted the city's request for summary judgment. We affirm.

The property comprises less than one-twentieth of an acre in a residential neighborhood and contains three residential units in one building. When the city's new zoning ordinance went into effect in December 1981, the building became a nonconforming use. It lay in an R-2 district that allows only a two-unit residential development as a conditional use. The lot is undersized, and the building did not meet setback requirements. The building was destroyed in October 1983, when the previous owner intentionally set fire to it, an act for which he was convicted of arson. Pursuant to the city's zoning ordinance, the owner had one year to reconstruct the destroyed building before he lost preexisting-use status and had to comply fully with the new ordinance provisions. The building was not rebuilt within the specified time.

Plaintiff acquired the property by foreclosure sale in May 1985. He applied for a zoning permit to remove the third floor of the building and remodel the remaining two units. The Winooski Zoning Board denied plaintiff's request, concluding he no longer had a right to nonconforming-use status and that the proposal failed to comply with current zoning requirements. The Board also denied a dimensional variance. The Chittenden Superior Court refused to review the

Board's decision,[1] but we held that trial de novo was required. *Chioffi v. Winooski Zoning Board*, 151 Vt. 9, 14, 556 A.2d 103, 106 (1989). The superior court then granted plaintiff a variance under 24 V.S.A. § 4468(b) to reconstruct the building as a duplex.

In December 1991, plaintiff brought this action claiming he was deprived of the use of his property during the time between the denial of the zoning permit by the city zoning board and the issuance of the permit pursuant to the 1990 court decision granting the variance. He requested $200,000 for estimated lost rent, increased cost of construction, other miscellaneous costs resulting from the regulatory delay in construction, and attorney's fees. The parties stipulated to the relevant facts[2] and filed cross-motions for summary judgment on liability. The court granted summary judgment in defendants' favor.

The Fifth Amendment to the United States Constitution guarantees that "private property [shall not] be taken for public use, without just compensation." Plaintiff claims that a regulatory taking for public use occurred during the permit process and he is entitled to "just compensation" for the temporary taking. For two reasons, we reject this claim.

First, no damages are available for the regulatory delay that occurred in this case. Plaintiff's theory is based on *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304 (1987), in which the Supreme Court held that "temporary" takings are not different in kind from permanent takings and require compensation for the period of the taking. *Id.* at 318. That case, and its holding, are, however, clearly distinguishable from the situation before us. In *First English*, the plaintiff's buildings were destroyed in a flood from the neighboring creek, and the plaintiff was prevented from rebuilding them because of an ordinance of the defendant county that imposed a moratorium on construction or reconstruction in the flood-protection area surrounding the creek. The California courts limited the plaintiff's remedy to a declaration that the ordinance was invalid, without payment of compensation, and specifically rejected damages as a remedy for any temporary taking. In rejecting the limits imposed by the California courts, the Supreme Court was

---

[1] As our decision reflects, the trial court actually ruled that trial de novo, as provided by 24 V.S.A. § 4472(a), was unconstitutional because it required the court to exercise administrative power. *Chioffi v. Winooski Zoning Bd.*, 151 Vt. 9, 10, 556 A.2d 103, 104 (1989). This had the effect of affirming the zoning board decision.

[2] The parties actually used the stipulation of facts presented to the superior court for the variance decision.

careful to distinguish from the situation presented here: "We limit our holding to the facts presented, and of course do not deal with the quite different question that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us." *Id.* at 321.

Other courts have viewed the above-quoted language in *First English* as holding that regulatory delay cannot normally give rise to a temporary takings claim. See, e.g., *Smith v. Town of Wolfeboro*, 615 A.2d 1252, 1258 (N.H. 1992) ("delay inherent in the statutory process of obtaining subdivision approval, including appeals to the superior court and to this court, is one of the incidents of ownership" and cannot give rise to takings claim); *Stoner v. Township of Lower Merion*, 587 A.2d 879, 886 (Pa. Commw. Ct. 1991) (compensation for temporary taking available only for "a taking effected by legislation or an adopted rule of continuing effect" and not for "withholding of approval under an ordinance which. . . clearly allows the reasonable use of land"). This analysis is consistent with the holdings of this Court and the United States Supreme Court on the timing of regulatory takings claims. In *Killington, Ltd. v. State*, 164 Vt. 253, 668 A.2d 1278 (1995), we held that a regulatory taking claim was not ripe because the plaintiff had failed to obtain a final decision on the application of the governmental regulation to its land. *Id.* at 261, 668 A.2d at 1283. We relied particularly on *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), where the United States Supreme Court held that the landowner must obtain a ruling on a variance request before a takings claim would be considered ripe. *Id.* at 190-91.

The rationale behind the ripeness rulings is that before the landowner has exhausted the regulatory process, it will be impossible to determine whether the landowner will be unable to derive economic benefit from the land. See *id.* at 191. Thus, the decisions "reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." *MacDonald, Sommer & Frates v. Yolo Cty.*, 477 U.S. 340, 351 (1986). Insistence on ripeness as defined in *Williamson* makes sense only if the regulatory process itself does not give rise to the takings claim. Put another way, there can be no taking until the nature and extent of the restriction on land are finally determined.

Although plaintiff does not address directly this ground for denying relief, he does argue that the temporary taking was so severe that his

development proposal became "economically unfeasible." There is no factual record to support this claim. None of the stipulated facts addresses the economic viability of plaintiff's development proposal. On the other hand, there is no suggestion that there was something extraordinary about the regulatory review in this case. Thus, if there is a temporary taking in these circumstances, there must also be a temporary taking, and resulting damages, in every case where a municipality denies a variance, and the denial is reversed on appeal. This would be an unwarranted expansion of the takings doctrine.

Second, we agree with the trial court that even if plaintiff could obtain compensation for the time period in which his proposal was in the regulatory process, there is no regulatory taking in this case. "The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests or denies an owner economically viable use of his land." *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980) (citations omitted).

Plaintiff's attack is on the provision of the zoning ordinance that prohibits restoration of a nonconforming use after it has been abandoned for a year. We have already held that such a provision advances a legitimate state interest and is otherwise constitutional:

> Plaintiff's main attack is on defendant's preexisting, nonconforming use provisions that prevent the restoration of a nonconforming use if it has been discontinued for a period of six months or more. As we held in [*State v.*] *Sanguinetti*, [141 Vt. 349, 351, 449 A.2d 922, 924 (1982)], reasonable zoning regulations that prevent the "undue perpetuation" of preexisting, nonconforming uses are constitutionally valid. See 24 V.S.A. § 4408(b). Nonconforming uses are inconsistent with the purpose of zoning and are tolerated only because they are antecedent to the applicable zoning provisions. A goal of zoning must be to phase out such uses. . . . There can be no question that the public interest is strong and supports the regulation. . . . In the words of the recent United States Supreme Court decisions on regulatory takings, the regulation "substantially advances legitimate state interests." . . . *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980).

*Hinsdale v. Village of Essex Jct.*, 153 Vt. 618, 626-27, 572 A.2d 925, 930 (1990). Provisions on the abandonment of nonconforming use are

common in zoning statutes and ordinances and are upheld as a valid exercise of police power. See *Hartley v. City of Colorado Springs*, 764 P.2d 1216, 1224 (Colo. 1988) (ordinance that prohibits resumption of nonconforming use that has been discontinued is constitutionally reasonable as long as it specifies reasonable time period for terminating nonconforming use); *Koeber v. Bedell*, 21 N.E.2d 200, 200 (N.Y. 1939) (upholding prohibition of reconstruction of nonconforming building after fire damaged it by more than seventy-five percent of its value); *City of Kettering v. Lamar Outdoor Advertising*, 525 N.E.2d 836, 841 (Ohio Ct. App. 1987) (local provision precluding reconstruction of nonconforming sign was constitutional).

We also agree with the trial court that the substantive zoning requirements in issue advance legitimate state interests. In losing preexisting, nonconforming-use status, plaintiff primarily lost the ability to build a high-density development on an extremely small lot. As the trial court concluded:

> Permitting multiple unit residences on extremely small lots will inevitably lead to crowded conditions. Light and ventilation within these apartments will be compromised. The risk of fire spreading from building to building is increased by undue proximity. Small children have no place to play except sidewalks or streets. Tenants' automobiles cannot be accommodated on site.

Again, the public interest supports the applicable zoning regulations.

This leaves only plaintiff's claim that the zoning ordinance provisions have denied him all economically beneficial use of his lot and thus worked a taking. See *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). The record in support of this claim is exceedingly sparse, consisting of only the stipulated fact that plaintiff could not restore the preexisting use and the findings of the superior court in support of the variance that a hardship was created. On this sparse record, plaintiff cannot make out his claim.

We start with the observation that plaintiff must show a denial of all economically beneficial use to prevail. When plaintiff purchased the land through the mortgage foreclosure, the one-year period in which to restore the preexisting use had already expired. Thus, plaintiff had no "distinct investment-backed expectations" in restoring the preexisting, nonconforming use. See *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). Any expectation of a three-unit residential development was no longer "reasonable." See *Lucas*, 505

U.S. at 1017 n.7. We conclude, therefore, that only total denial of economically beneficial use would, under these circumstances, create a taking.

There is, however, no showing of denial of all economically beneficial use. At best, plaintiff has shown inability to develop his property for its most profitable beneficial use, which is not a taking. See *Penn Central*, 438 U.S. at 130. Although plaintiff was unable to reconstruct the preexisting building, he retained "the fundamental incidents of ownership, including the right to possess the property, exclude others from it, alienate the property and continue to use it for residential and recreational purposes; and [he was] significantly diminished only in [his] discretion to rebuild a structure . . . ." *Esposito v. South Carolina Coastal Council*, 939 F.2d 165, 170 (4th Cir. 1991). This record does not support a conclusion that plaintiff's land was rendered "valueless" by the zoning ordinance provision. See *Lucas*, 505 U.S. at 1020.

■ Although plaintiff relies on the zoning variance decision, he overlooks its major significance. The availability of a variance is an essential part of the regulatory scheme to determine to what extent a landowner will be able to use the land. The availability of a variance is determined de novo by the superior court. See 24 V.S.A. §§ 4468(a), 4471, 4472(a). A variance is available for the circumstances present here, where the "physical conditions peculiar to the particular property" prevent its development consistent with the zoning ordinance. See 24 V.S.A. § 4468(a)(1), (2).

We do not have to speculate whether the variance criteria are adequate to address plaintiff's constitutional challenge because plaintiff received a variance under the criteria. Not only was plaintiff allowed some economically beneficial use of the property, he was allowed the specific use he requested. There was no taking.

*Affirmed.*