2004 VT 24

# TOWN OF GRAND ISLE v. Ivan PATRY

[852 A.2d 573]

No. 02-468

¶ 1. March 9, 2004. Landowner Ivan Patry appeals from the environmental court's decision ordering him to remove his trailer and to apply to the Town of Grand Isle for various land-use permits before developing his property. We reject landowner's contention that a two-hundred-year-old land grant, from which he claims he can trace his chain of title, precludes the Town from applying state and local zoning laws to his property. Accordingly, we affirm the environmental court's decision.

¶ 2. Landowner acquired the subject property by quitclaim deed on May 14, 2002. Because the property is only 45 feet wide and 480 feet long, any dwelling would violate the Town's 25-foot setback requirement. Nevertheless, without applying for any municipal permits or variances, landowner placed a travel camper on the property, uncovered a failed septic system, and began to construct a water drainage system. He planned to replace the old septic system and build some type of residence on the property. On May 20, 2002, the Town's zoning administrator issued a written notice detailing several zoning violations and informing landowner that he could appeal the notice of violation to the Town's development review board within fifteen days.

¶ 3. On June 4, 2002, the fifteenth day following the notice of violation, the Town asked the environmental court to preliminarily enjoin landowner from engaging in any further development activity on the property.* Two days later, the Town filed a complaint seeking injunctive relief and the imposition of monetary penalties. On June 14, 2002, following a hearing, the court granted the Town's request for a preliminary injunction. The court ruled that landowner was required to apply for municipal permits, even assuming that the property had been passed down in an unbroken chain of title from the original 1779 land grant. The court ordered landowner to remove the travel trailer from the property until he obtained a setback variance, to apply for a drainage permit for drainage work already done, to apply for a septic system permit, to obtain a variance for setback requirements pertaining to any other work done on the property, and to apply

---

* Apparently, landowner never appealed the zoning administrator's notice of violation, even though the notice satisfied due process requirements by informing him that he had fifteen days to appeal the decision to the development review board. See *Town of Randolph v. Estate of White*, 166 Vt. 280, 287, 693 A.2d 694, 698 (1997) ("To meet due process requirements, the notice of a zoning violation must inform the defendant how to contest the decision."). Under §§ 4464(a) and 4472(a) of Title 24, the exclusive remedy for seeking review of a zoning administrator's decision is to appeal within fifteen days of the decision to the board of adjustment or the development review board. Failure to do so precludes an interested party from challenging a notice of violation in a later enforcement proceeding. See *Town of Charlotte v. Richmond*, 158 Vt. 354, 356-57, 609 A.2d 638, 639 (1992). In this case, however, the environmental court did not consider this issue, and the Town has not raised the issue either before the environmental court or here on appeal. Under these circumstances, we will address the merits of landowner's appeal.

for a building permit. In an October 14, 2002 decision, after landowner unsuccessfully attempted to have the case removed to federal court, the environmental court denied landowner's motion for reconsideration and directed an entry of final judgment as to the issues decided in its June 14 order. The court decided that landowner should not be subjected to a hearing on penalties until he had an opportunity to appeal the question of whether the Town's zoning laws applied to his property.

¶ 4. On appeal, landowner argues that the environmental court erred by subjecting his property to the Town's zoning laws. He contends that a 1779 land grant known as the "Charter of the Two Heroes," from which he claims his property was passed down through an unbroken chain of title, is a contract that conferred a right of inhabitation and other privileges, and that 24 V.S.A. § 4490 prohibits the Town from applying its zoning laws to interfere with those rights obtained under the land grant. Section 4490 states that the provisions of the Vermont Planning and Development Act, 24 V.S.A. §§ 4301-4495, which took effect in March 1968, "shall not affect any act done, contract executed or liability incurred prior to March 23, 1968." The Act sets forth statewide criteria for the implementation and enforcement of local zoning ordinances. See 24 V.S.A. § 4401(b)(1) (authorizing municipalities to adopt zoning regulations to permit, prohibit, restrict, regulate and determine land development); id. § 4443(a)(1) (prohibiting land development within area affected by zoning regulations unless administrative officer issues zoning permit in conformance with regulations); id. § 4445 (authorizing zoning administrator to institute enforcement proceedings upon violation of zoning laws).

¶ 5. We find no merit to landowner's argument. The Charter of the Two Heroes does not immunize land conveyed therein from land-use regulation later enacted pursuant to the state's police powers. See *Galanes v. Town of Brattleboro*, 136 Vt. 235, 240, 388 A.2d 406, 410 (1978) ("the sanction behind zoning laws is the police power of the state, constitutionally exercised where it is reasonably related to public health, safety, morals or general welfare"); 24 V.S.A. § 4302(a) (purpose of Vermont Planning and Development Act, among other things, is "to encourage the appropriate development of all lands in this state ... in a manner which will promote the public health, safety against fire, floods, explosions and other dangers"). The Charter granted most of what is now known as Grand Isle to patriots who fought the British during the Revolutionary War. The Charter declares that those who thereafter inhabit the land shall be entitled

> to all Priviledges & Immunities that the Inhabitents of other Towns do & ought by the Laws & constitution of this State exercise & Enjoy — To Have and to Hold, the said Granted Premises as above expressed, in equal Shares and Rights, with all the Priviledges, and appurtenances thereto belonging or appertaining unto them and their Respective Heirs forever.

The Charter of the Two Heroes (1779), State Papers of Vermont, Charters Granted by the State of Vermont 192, 195 (J. Williams ed., 2d ed. 1974).

¶ 6. We fail to see how this language confers upon the grantees or their heirs a "right of inhabitation" exempting them from zoning laws. The language awards the grantees land along with the concomitant privileges enjoyed by landowners in other towns. Nothing in that language, however, suggests that the Charter was intended to strip the state of any of its police powers, including the power to regulate land use and development. See *Dodge v. Town of Worcester*, 129 Vt. 441, 444-45, 282 A.2d 799, 801-02 (1971)

(language in charters did not provide express perpetual exemption from taxation of leased lands; such exemption could be claimed only if it formed express condition of grant); *Herrick v. Town of Randolph*, 13 Vt. 525, 530 (1841) (same). Further, the fact that modern zoning did not exist at the time of the 1779 land grant does not demonstrate that the state abdicated its right to exercise whatever police powers would be required at a later time. See *Williams v. Town of North Hero*, 46 Vt. 301, 319 (1873) (provisions of 1779 land grant "were not settled and adopted with sharpness of attention to the terms used, or with cautious consideration of the possible questions that the course of events thereafter, in the progress of population and society, might give rise to").

¶ 7. Landowner's reliance on the Treaty of 1783 is even more tenuous. Apparently, landowner claims that the Treaty, which was intended to resolve land disputes between American and British citizens following the Revolutionary War, provided a limited amount of time for anyone to contest the property rights granted under the Charter of the Two Heroes, and that the Town, having failed to do so, cannot now apply its zoning laws in degradation of those property rights. This case does not involve any land dispute between British and American citizens. Nor is it likely that such a dispute would be actionable more than two hundred years after the fact. Cf. *Robins Island Preservation Fund v. Southold Dev.*, 959 F.2d 409, 422 (2d Cir. 1992) (finding "no logic in the proposition that Great Britain and the United States bargained for and created a right of action that would survive the inaction of the aggrieved parties and their heirs over a period of centuries"). In any event, as noted, no rights granted in the Charter exempted landowner from the application of municipal zoning laws; therefore, the Treaty could not have preserved any such rights.

¶ 8. Landowner's reliance on 24 V.S.A. § 4490 is also unavailing. Section 4490 provides that the Vermont Planning and Development Act "shall not affect any act done, contract executed or liability incurred prior to March 23, 1968." As noted, the Charter of the Two Heroes provided no special property rights beyond those enjoyed by landowners in all towns, and thus is not inconsistent with the imposition of zoning regulations. As with the Treaty of 1783, § 4490 cannot preserve rights never granted in the Charter. Section 4490 does not exempt from the Act all land in which title can be traced to pre-existing land grants. Rather, the provision merely acknowledges that the Act would have no effect on pre-existing, executed contracts concerning land use or development — such as contracts to convey parcels of land below the minimum acreage allowed under zoning regulations. Without the support of § 4490 or the eighteenth century documents, landowner's argument amounts to only a premature takings claim. See *Killington, Ltd. v. State*, 164 Vt. 253, 257, 668 A.2d 1278, 1281 (1995) (regulatory takings claims are not ripe for review until applicant has obtained final decision regarding permit request and has utilized state procedures for obtaining just compensation).

¶ 9. Although the Town did not file a cross-appeal, it raises two arguments of its own. First, the Town contends that the environmental court erred by accepting a lay witness's testimony concerning the title search done on the subject property. Given our resolution of this appeal, we need not address this issue, assuming that it is properly before us. The environmental court made no legal ruling on the validity of landowner's title search; rather, the court merely assumed, for purposes of this litigation, that the subject property had been passed down to

landowner through an unbroken chain of title from the Charter of the Two Heroes.

¶ 10. The Town also argues that the environmental court erred by directing entry of final judgment with respect to the Town's request for a preliminary injunction without determining what fines should be assessed against landowner. We conclude that the Town's claim of error is both inadequately briefed and unnecessary. While the environmental court's decision to direct a final judgment in this matter is questionable, see *Kelly v. Lord*, 173 Vt. 21, 31, 783 A.2d 974, 982 (2001) (setting forth necessary prerequisites for invoking Rule 54(b), including requirement that there be multiple parties or claims for relief); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2656, at 48 (3d ed. 1998) (noting that Rule 54(b) may be invoked only in relatively select group of cases and applied to even more select category of decisions), Town fails to brief issues concerning the limits of Rule 54(b) or the nature of orders granting preliminary injunctive relief. In any event, the relief the Town is seeking — remand for the environmental court to consider the Town's request for penalties — follows from our affirmance of the court's June 14 and October 14, 2002 orders. In short, assuming that the Town's argument is properly before us, it is superfluous.

*Affirmed; cause remanded for further proceedings in the environmental court.*

Motion for reargument denied April 14, 2004.