STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  | { |  |
|---|---|---|
| **In re Umpire Mtn., LLC WW & WS Permit** | { | **Docket No. 171-12-12 Vtec** |
|  | { |  |

## Decision on Cross-Motions for Summary Judgment

Charles Chapman, Barbara Chapman, John Ferine, and Cheryl Nicholas (Appellants) appeal the Wastewater System and Potable Water Supply Permit WW-7-3606 (the Permit) issued by the Vermont Agency of Natural Resources, Department of Environmental Conservation (DEC) to Umpire Mountain, LLC (Applicant) on May 21, 2012. The Permit authorizes Applicant to create five new, on-site potable water supply and wastewater systems to serve five proposed single-family residences on Applicant's 10.3 acres of undeveloped land on Washburn Road in Burke, Vermont. Currently pending before this Court are cross-motions for summary judgment filed by Appellants and Applicant concerning whether the Permit unlawfully impacts Appellants' use of their property. The Agency of Natural Resources joins the Stipulation of Facts, but even though the agency's powers and actions are challenged, the agency has not filed a response to either motion.

In this proceeding, Appellants are represented by Robert A. Gensburg, Esq., Applicant is represented by Kyle C. Sipples, Esq., and the Agency of Natural Resources is represented by Anne Whitely, Esq.

## Stipulated Facts

On September 11, 2013, the parties filed a written Stipulation of Facts applicable to this appeal, which was also signed by the Agency of Natural Resources. No party has objected to this stipulation, and therefore we set forth the following facts verbatim:

1.  In 1979, Bruce Washburn subdivided 151.35 acres of land on Washburn Road and Joanne Drive in Burke into 14 lots (the "Washburn Subdivision"). Washburn Road is Burke Town Highway 63, and Joanne Drive is Burke Town Highway 64. Each of the original 14 lots was larger than 10 acres. A survey map of the Washburn Subdivision is attached as Exhibit A.

1

2. The applicant for a permit in this case is Umpire Mountain, LLC (the "LLC"), which now owns Lot #5 in the Washburn Subdivision. Lot #5 contains 10.3 acres of presently undeveloped land.

3. The Washburn Subdivision is subject to Land Use Permit 7C0451 and five amendments thereto. On November 29, 1990, District Environmental Commission issues [sic] Land Use Permit Amendment 7C0451-2, which authorized the subdivision of Lot #5 into two lots, the first a house site of 1.3 acres, and the second the remaining nine acres.

4. On May 21, 2012, the Vermont Department of Environmental Conservation (the "Department") issued Wastewater System and Potable Water Supply Permit WW-7-3606 (the "Permit") to the LLC. This is the permit that is the subject of this appeal. The Permit authorizes the LLC to subdivide the nine acre portion of Lot #5 into four more house sites, for a total of five house sites. Each of the five house sites will have its own on-site potable water supply and its own on-site wastewater disposal system.

5. The appellants in this case are Charles and Barbara Chapman, John Ferine and Cheryl Nicholas.

6. Mr. and Mrs. Chapman own Lot #6 in the Washburn Subdivision. Lot #6 contains 10.5 acres. The southerly boundary of Lot #6 is the northerly boundary of Lot #5. Lot #6 is improved with a house and one outbuilding. It has its own permitted on-site potable water supply and wastewater disposal system. Lot #6 is Mr. and Mrs. Chapman's principal residence.

7. John Ferine owns Lot #7 in the Washburn Subdivision. Lot #7 contains 10.3 acres. Lot #7 is located to the west of and directly across Joanne Drive from the LLC's property. Lot #7 is undeveloped.

8. Mr. Ferine also owns Lot #8 in the Washburn Subdivision. Lot #8 contains 11.4 acres of land. Lot #8 is located adjacent to and northerly of Lot #7. Lot #8 is undeveloped.

9. Cheryl Nicholas owns Lot #9A in the Washburn Subdivision, which is one of the lots into which Lot #9 was subdivided on November 29, 1990 pursuant to Amended Land Use Permit 7C0451-3. Lot #9A contains a total of 1.5 acres. It is located to the west of and directly across Washburn Road from the LLC's property. Lot #9A has a small camp on it. A survey map of Lot #9A is attached as Exhibit B.

10. Cheryl Nicholas also owns Lot #9B in the Washburn Subdivision. Lot #9B, essentially the remainder of the south half of Lot #9, contains 3.5 acres. Lot #9B is located adjacent to and westerly of Lot #9A. Lot #9B is undeveloped.

11. Section 1-807 of the Vermont Wastewater System and Potable Water Supply Rules, which became effective on September 29, 2007 (the "WW Rules"), prescribe isolation distances between wastewater systems and certain features of land that is [sic] being developed including wells and springs.

12. Section 11.4 of Part 11 of Appendix A of the Vermont Water Supply Rules (the "WS Rules") prescribes in greater detail the isolation distances between "water wells," i.e. sources of potable water, and potential sources of contamination including wastewater systems.

13. Under both the WS Rules and WW Rules (together, the "Rules"), the prescribed isolation distances that are listed therein are not absolute. Both sets of Rules authorize the Secretary to increase or decrease a particular isolation distance based on various site-specific considerations. In addition, the ability to construct a wastewater system and/or potable water supply on adjoining property is also dependent on the specific conditions of that property. For example, where a septic system can be located is first determined by an assessment of whether a particular location meets the minimum site conditions, as described in § 1-805 of the WW Rules.

14. The isolation distance for a potable water supply is commonly referred to as a "well shield." Similarly, the isolation distance for a wastewater system is commonly referred to as a "septic shield". [sic] A well or septic shield may be entirely contained on the property that is being developed or may extend onto adjoining property not owned by person [sic] developing the well or septic system. See § 1-807 of the Rules, footnote (a).

15. When an isolation distance extends onto property not owned by the applicant it is commonly referred to as "overshadowing" that non-owned property.

16. As of 2010, 10 V.S.A. § 1973(j), when an applicant for a Wastewater System and Potable Water Supply permit proposes a potable water supply or wastewater system with isolation distances that extend onto non-owned property, the applicant must notify the owner of the non-owned property.

3

17. Isolation distances have been overshadowing adjoining properties under both sets of Rules since those Rules were adopted, but the notification referred to in paragraph 16 was not required until 2010.

18. The Permit was approved pursuant to a site plan prepared by Foresite Engineering Services PLC (the "Site Plan"). Shannon Larocque is Foresite's principal engineer. Mr. Larocque is a Vermont licensed civil engineer and is qualified to design on-site potable water supplies and wastewater systems. The Site Plan identifies the locations of the on-site potable water supplies and the on-site wastewater disposal systems on each of the five lots in the LLC's proposed subdivision. Mr. Larocque's design and the Site Plan comply with the Rules. The Site Plan is attached as Exhibit C.

19. In the case now before the court, the isolation distances cross the LLC's boundary lines and "overshadow" a portion of each appellant's property.

20. Because of septic shield overshadowing, the Permit creates an area on Mr. and Mrs. Chapman's property within which they could potentially be prohibited from constructing a potable water supply on their own property. This area is shown in blue on Exhibit C.

21. Because of well shield overshadowing, the Permit creates areas on Mr. Ferine's property within which he could potentially be prohibited from constructing a wastewater system on his own property.

22. Because of well shield overshadowing, the Permit creates areas on Lot #9A, Ms. Nicholas' [sic] property, within which she could potentially be prohibited from constructing a wastewater disposal system on her own property.

23. Mr. and Mrs. Chapman's existing potable water supply and wastewater system do not overshadow any adjoining property.

24. Based on the approved plans under permit 7C0451, a portion of the septic shield for Lot #7, appellant John Ferine's property, overshadows appellant Ferine's Lot #8 of the Washburn Subdivision.

25. Based on the approved plans under wastewater system and potable water supply permit WW-7-1017, a portion of the well shield and septic shield for Lot #9A, appellant Cheryl Nicholas' [sic] property, overshadows a portion of Lot #5, the LLC's property.

26. No Appellant's title to his or her property is burdened by any easement with respect to which the LLC's property is the dominant estate, nor by any license, nor by any restrictive covenant or other land use restriction in favor of the LLC's property.

27. No compensation has been paid by any person or governmental authority to any appellant by reason of the well shields and septic shields that overshadow from the LLC's property onto their respective properties.

28. In addition, no compensation has been paid either to the LLC or the owner of Lot #8 by reason of the well shields and septic shields that overshadow from the appellants' properties.

29. The Appellants agree that ¶¶ 23, 24 and 28 are not disputed, but believe they are not material. They consent to their inclusion so that the parties could file a single statement of undisputed material facts for their and the court's convenience.

## Discussion

In their motion for summary judgment, Appellants argue that the Permit is invalid because it takes an interest in real property from each Appellant for Applicant's private use. Specifically, Appellants argue that where Applicant's permitted well shield or septic shield crosses their respective property lines, the State "has taken a negative easement from the neighbor without paying compensation for the interest taken and given it to the developer for the developer's private benefit." (Appellants' Motion for Summary Judgment at 2, filed Sept. 11, 2013.) Thus, Appellants argue, the Permit is invalid under Chapter 1, Article 2 of the Vermont Constitution and the Fifth Amendment of the U.S. Constitution because it takes Appellants' property for the benefit of a private party and not for a public use. Appellants further argue that if the Permit constitutes a valid taking, then Appellants must be justly compensated.

Applicant argues that the Permit fails to create an easement because the parties have not demonstrated the necessary intent to establish an easement and because the permit process did not create an easement by prescription or an easement by necessity. Applicant further argues that Appellants have failed to demonstrate that the Permit amounts to a regulatory taking because they allege only "a potential restriction on the placement of a well and/or septic system," which is insufficient to establish a taking under either Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978) or Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015–16 (1992). (Defendant

Umpire Mountain's Motion for Summary Judgment and Objection to Plaintiffs' Motion for Summary Judgment at 4–8, filed Oct. 10, 2013.)

## I. Summary Judgment Standard

We will grant summary judgment if a moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). When considering cross-motions for summary judgment, the court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. As set out verbatim above, the parties have submitted a Stipulation of Facts which they agree "contains the material and undisputed facts applicable in this appeal."

## II. Statement of Questions

In the Environmental Division, an appellant's Statement of Questions "functions as a cross between a complaint filed before the Civil Division and a statement of issues filed before the Vermont Supreme Court." In re Conlon CU Permit, No. 2-1-12 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Aug. 30, 2012) (Durkin, J.). That is, it provides notice to other parties of the issues to be determined within the case, while also limiting the scope of the appeal. Id. Appellants' Statement of Questions presents the following three questions for this Court's review:

1. Does the State or Umpire Mountain, LLC have the right or power by way of this permit to prohibit Appellant Cheryl Nicholas from installing septic system leach fields at certain locations on her property?

2. Does the State or Umpire Mountain, LLC have the right or power by way of this permit to prohibit Appellant John Ferine from installing septic system leach fields at certain locations on his property?

3. Does the State or Umpire Mountain, LLC have the right or power by way of this permit to prohibit Appellants Charles Chapman and Barbara Chapman from installing septic system leach fields and drilled wells at certain locations on their property?

In order to provide clarity regarding the scope of this appeal and to identify the question or questions properly before us, we paraphrase and interpret Appellants' questions as follows:

1. In considering an application for a Wastewater System and Potable Water Supply Permit, does the DEC have the power to impose isolation distances that cross onto the property of Appellant Cheryl Nicholas and thereby prevent Ms. Nicholas from obtaining a permit to install septic system leach fields at that location on her property?

6

2. In considering an application for a Wastewater System and Potable Water Supply Permit, does the DEC have the power to impose isolation distances that cross onto the property of Appellant John Ferine and thereby prevent Mr. Ferine from obtaining a permit to install septic system leach fields at that location on his property?

3. In considering an application for a Wastewater System and Potable Water Supply Permit, does the DEC have the power to impose isolation distances that cross onto the property of Appellants Charles Chapman and Barbara Chapman and thereby prevent the Chapmans from obtaining a permit to install septic system leach fields and drilled wells at that location on their property?

### III.    Wastewater and Water Supply Rules and Permits

Because we read Appellants' questions to ask about DEC's power in the Wastewater System and Potable Water Supply permit process, we first consider the source of authority for imposing the isolation distances at issue. The relevant provisions of the Wastewater System and Potable Water Supply Rules and the Water Supply Rules were adopted pursuant to 10 V.S.A. Chapter 64, regarding "Potable Water Supply and Wastewater System Permit." 16-3 Vt. Code R. § 300:1-103 (2007); 16-3 Vt. Code R. § 500:1.1 (noting that the Water Supply Rules were adopted pursuant to 10 V.S.A. Chapter 61, Water Supply and Wastewater Permit, which was repealed in 2001 and replaced by 10 V.S.A. Chapter 64). A primary purpose of Chapter 64 and the resulting rules is "to protect human health and the environment, including potable water supplies, surface water and groundwater . . . ." 10 V.S.A. § 1971(1). Protecting public health is a proper exercise of the police power. See City of Montpelier v. Barnett, 2012 VT 32, ¶ 25, 191 Vt. 441.

Section 1978 of Title 10 provides that the Secretary "shall adopt rules . . . necessary for the administration of this chapter . . . [which] shall include, but are not limited to . . . design requirements, including isolation distances." 10 V.S.A. § 1978(a)(3) (emphasis added). Rule 1-807 of the Wastewater System and Potable Water Supply Rules sets forth specific isolation distances between protected items and any leachfield, septic tank, or sewer. 16-3 Vt. Code R. § 300:1-807 (2007). Footnote (a) provides that the distances "apply regardless of property line location and ownership." Id. Part 11.4 of Appendix A of the Water Supply Rules sets forth isolation distances "between wells and potential sources of contamination . . . ." 16-3 Vt. Code R. § 500:A11.4 (2010). Thus, in imposing the isolation distances at issue, DEC implemented Rule 1-807 of the Wastewater System and Potable Water Supply Rules and Part 11.4 of Appendix A of the Water Supply Rules (together, the Rules), in order to protect human health and the environment and pursuant to the requirements of the statute. We conclude that pursuant to Chapter 64 and the

7

Rules, DEC has the power to impose the isolation distances at issue in considering a Wastewater System and Potable Water Supply Permit application.

## IV.     Jurisdiction

To the extent that Appellants ask whether DEC has affected the real property rights of the parties in applying the isolation distances, they ask us to make a determination of property rights which is beyond our jurisdiction. See In re Britting Wastewater/Water Supply Permit, No. 259-11-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Apr. 7, 2008) (Wright, J.). Thus, we are unable to determine whether DEC's issuance of the Permit created any "negative easement" and whether, as a result, a per se "taking" of an easement on Appellants' property has occurred. We recognize that parties are increasingly asking this Court to decide issues involving property rights. Without a legislative change to the scope of our jurisdiction, however, we may do so only upon special assignment pursuant to V.R.C.P. Rule 16.1 by the Chief Administrative Judge of the Trial Courts following the initiation of a matter within the civil division.

Moreover, to the extent that Appellants' questions challenge the constitutionality of the Rules on their face, we are also without jurisdiction to answer them. Id. at 5; 3 V.S.A. § 807 (the validity of a rule may be challenged in the Washington superior court). Beyond an adjudication of property rights or the constitutionality of the Rules on their face, we do have jurisdiction to determine whether the Rules, as applied to Appellants by way of the Permit, amount to a taking due to the State's placement of potential development limitations on their properties. See Britting, No. 259-11-07 Vtec, slip op. at 5 (noting Court's subject matter jurisdiction to consider matters arising under 10 V.S.A. Chapter 220).

## V.     Takings Claim within this Court's Jurisdiction

In considering whether the isolation distances effect a regulatory taking we first note that Appellants neither allege nor demonstrate that DEC has deprived them of all "economically viable use" of their land. See Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015–16 (1992) (holding that a "total taking" occurs "where regulation denies all economically beneficial or productive use of land"). To determine whether a landowner has suffered deprivation of all economically viable use, we must consider not only the portion of property affected by the regulation but "the parcel as a whole." Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 327 (2002) (citing Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 130–31 (1978)). Thus, we find that

DEC's action does not amount to a "total taking" of Appellants' property. See <u>Lucas</u>, 505 U.S. at 1030.

Appellants likewise fail to allege facts sufficient to find a "partial taking." In order to make a determination as to a partial taking, we must weigh (1) the economic impact of the Rules on Appellants; (2) the interference with Appellants' "distinct investment-backed expectations"; and (3) the character of DEC's action. See <u>Penn Cent. Transp. Co.</u>, 438 U.S. at 124. Merely alleging that a landowner's property use has been limited is insufficient to establish a taking. See <u>Chioffi v. City of Winooski</u>, 165 Vt. 37, 43 (1996) (noting that an inability to develop property for its most profitable beneficial use is not a taking). Indeed, it is unclear in the first instance whether Appellants have been limited in any way in the development of their property. Although the DEC decision on appeal is final as to the design and permitting of Applicant's wastewater and water supply systems, we are unable to conclude whether Applicant's permit restricts development on Appellants' properties. Appellants fail to allege that the Permit will affect any existing development plans. They state only that they "could potentially be prohibited" from creating a wastewater or water supply system within the isolation zones. Appellants also fail to allege any particular economic impact resulting from the Permit. Without such information, it is impossible to determine how DEC has limited Appellants in the use of their property.

Appellants do allege, however, that the Permit's isolation distances cross onto their property. Because Appellants may be prohibited from developing portions of their properties, we cannot conclude as a matter of law that no regulatory taking has occurred under the <u>Penn Cent. Transp. Co.</u> factors. We do note, however, that based on the stipulation of facts, Appellants have not established a regulatory taking. As such, we find that neither Appellants nor Applicant are entitled to judgment as a matter of law at this stage, and we must therefore **DENY** both motions for summary judgment.

### Conclusion

For the reasons set forth above, we conclude that we are without jurisdiction to answer Appellants' questions asking whether the Permit created an easement of any kind, or whether the Wastewater System and Potable Water Supply Rules and the Water Supply Rules are unconstitutional on their face. To the extent that Appellants ask whether a taking has otherwise occurred due to limitations on how they might use their property, we do have jurisdiction. We do not have sufficient facts before us at this time, however, to determine whether a regulatory

taking has occurred.  Therefore, Appellants' and Applicant's motions for summary judgment are both **DENIED.**

Done at _____ this ___ day of February 2014.


_____

Thomas G. Walsh, Environmental Judge