NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 84

No. 2014-470

| | |
|---|---|
| Donald Gould | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Civil Division |
| | |
| Town of Monkton | September Term, 2015 |

Robert A. Mello, J.

Colin R. Hagan, David J. Shlansky and Kate S. Swartz, Law Clerk (On the Brief) of Champlain Law Group, PLC, Vergennes, for Plaintiff-Appellant.

James F. Carroll and Constance Tryon Pell of English, Carroll & Boe, P.C., Middlebury, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **REIBER, C.J.**    Landowner appeals three rulings of the superior court's civil division pertaining to the Town of Monkton's new zoning regulations. He argues that the trial court erred by finding (1) that it had no jurisdiction to hear a declaratory judgment action seeking to invalidate the new zoning regulations; (2) that landowner had no due process interest in the process by which zoning regulations were adopted; and (3) that landowner had no due process property interest in the application of the previous zoning regulations. We affirm.

¶ 2.    For several years, Monkton planned to replace its 1978 zoning regulations and their 1986 amendments. In February 2011, the Monkton planning commission held its final public hearing on a new set of zoning regulations, which it called the Unified Planning

Document (UPD). After approving the UPD, the planning commission presented it to the Monkton selectboard. On August 4, 2011, the selectboard published notice for its first public hearing on the UPD, and the town began reviewing all zoning applications under the UPD rather than under the 1978 regulations. The selectboard then held the first public hearing later in August and its second, final public hearing in January 2012. After approving the UPD, the selectboard submitted it to the Monkton town clerk to be voted on at a special election by town residents.

¶ 3. However, before the town vote was held, the planning commission submitted an updated report on the UPD to the selectboard addressing several issues. In response to this report, the selectboard made revisions to the UPD without notice of a public hearing. These revisions included modifying the requirements for obtaining a certificate of occupancy, increasing the number of lots needed to create a mobile home park, and increasing the required topsoil depth for stormwater facilities. The selectboard then submitted the revised UPD to the Monkton town clerk for the upcoming special election. The town vote was held in February 2012, and the UPD was approved by a vote of 130 in favor, 128 against.

¶ 4. Landowner alleges that the new zoning regulations under the UPD interfere with his long-held development plans and reduce the potential economic return on his property in Monkton. Namely, by increasing the minimum lot size from one acre to two and by increasing the lot frontage minimum, the UPD reduces the number of lots into which landowner can subdivide his property. In January 2012—prior to both the selectboard's approval of the UPD revision and the town vote—landowner had sent a letter to the selectboard objecting to the process through which the selectboard approved the UPD. In the letter, landowner alleged that the selectboard had not fulfilled the statutory public notice requirements for adopting new zoning regulations and that the UPD was therefore invalid.

¶ 5. In March 2013—thirteen months after the town vote adopting the UPD—landowner filed a declaratory judgment action with the civil division of the superior court seeking to invalidate the UPD on the ground that it was enacted in violation of 24 V.S.A. ch. 117. In this action, he repeated the same objections as those in his letter to the selectboard. Specifically, landowner alleged that the Monkton selectboard (1) failed to provide proper notice of public hearings on the UPD by not including its full text or providing a detailed table of its contents; (2) amended the UPD outside the permitted time period and without the required hearings; and (3) disregarded the town plan by adopting the UPD.

¶ 6. In April 2013, Monkton responded to landowner's action through a motion to dismiss, arguing that the civil division did not have subject matter jurisdiction because the environmental division has exclusive jurisdiction to hear matters arising under 24 V.S.A. ch. 117, which addresses municipal and regional planning and development. Moreover, in June 2013, the court raised sua sponte the question of whether landowner had standing to pursue his action in light of the fact that he had not yet applied for or been denied a permit. Landowner filed a brief on the issue in which he stated an additional claim premised on a violation of his right to procedural due process. Monkton also filed a brief on the issue of standing and included a response to landowner's constitutional argument.

¶ 7. In May 2014, landowner applied to the Monkton Development Review Board to subdivide his property to create a one-acre lot. Landowner did so in response to the court's question regarding standing, which had suggested that he lacked an injury in fact or that his claim was not ripe without a permit denial. Even so, landowner maintained that he was not required to apply for a permit to have standing. Notably, landowner's application was made in accordance with the 1978 regulations, not with the UPD. Because of this, the Development Review Board rejected landowner's application. Landowner did not appeal this denial to the environmental division of the superior court.

3

¶ 8.    In November 2014, after reviewing the parties' briefs on the issue of standing, the trial court granted Monkton's motion to dismiss on three grounds.  First, the court held that it had no jurisdiction to hear a declaratory judgment action seeking to invalidate the UPD on statutory grounds because such jurisdiction lies exclusively with the environmental division.  Second, it held that there is "no constitutionally protected property interest in demanding compliance with" state-mandated ordinance adoption procedures.  Third, it held that landowner had no vested rights to develop his property under the previous zoning regulations, and thus no property interest protected by procedural due process, because he had applied for a permit only after the UPD took effect.  Landowner now appeals each of these holdings.

## I. Statutory Argument

¶ 9.    Landowner first argues that the Legislature did not intend to divest the civil division of its jurisdiction over declaratory judgment actions seeking to invalidate municipal zoning regulations as violations of 24 V.S.A. ch. 117.  Here, the critical question raised by landowner is whether 4 V.S.A. § 34 divests the civil division of jurisdiction over his claims that Monkton enacted the UPD in violation of 24 V.S.A. ch. 117.  That statute provides that the environmental division shall have jurisdiction of, among other things, matters arising under 24 V.S.A. ch. 117.  Landowner does not dispute that this statute gives the environmental division jurisdiction over claims arising under 24 V.S.A. ch. 117, but argues that the civil division retains concurrent jurisdiction.  He points to the civil division's broad general jurisdiction, as well as language in a related statute assigning the family division exclusive jurisdiction over specified matters to support his claim that the environmental division's jurisdiction over claims like his is not exclusive but, rather, is concurrent with the civil division.  Compare 4 V.S.A. § 33 ("[T]he Family Division shall have <u>exclusive jurisdiction</u> to hear and dispose of [certain enumerated family law proceedings]" (emphasis added)) with 4 V.S.A. § 34 ("[T]he environmental division shall have . . . <u>jurisdiction</u> of matters arising under [24 V.S.A. ch. 117]") emphasis added)).

4

Specifically, he argues that the absence of the term "exclusive jurisdiction" in 4 V.S.A. § 34 indicates that the civil division retains concurrent jurisdiction over matters arising under 24 V.S.A. ch. 117. See Hopkinton Scout Leaders Ass'n v. Guilford, 2004 VT 2, ¶ 8, 176 Vt. 577, 844 A.2d 753 (mem.) ("Where the Legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the Legislature did so advisedly.") (citation omitted).

¶ 10. We disagree: through its 2009 reorganization of the superior court, the Legislature not only divested the civil division of exclusive jurisdiction over matters arising under 24 V.S.A. ch. 117 but also granted exclusive jurisdiction to the environmental division. When viewed together, the plain language of the statutes governing the jurisdiction of the civil and environmental divisions make this clear. First, 4 V.S.A. § 31(1) establishes that the civil division has "original and exclusive jurisdiction of all original civil actions, except as otherwise provided in sections 2, 32, 33, 34, 35, and 1102 of this title." Then, 4 V.S.A. § 34 states an exception to the civil division's general and exclusive jurisdiction. As previously noted, it explicitly details that the "environmental division shall have . . . jurisdiction of matters arising under [24 V.S.A. ch. 117]." Finally, 4 V.S.A. § 31(5) clarifies that the civil division has "jurisdiction to hear and dispose of any other matter brought before the Court pursuant to law that is not subject to the jurisdiction of another division." Because 4 V.S.A. § 34 explicitly grants jurisdiction over matters arising under 24 V.S.A. ch. 117 to the environmental division, those matters are clearly an exception to the civil division's general jurisdiction under both 4 V.S.A. § 31(1) and 4 V.S.A. § 31(5). The civil division has neither exclusive jurisdiction nor concurrent jurisdiction over matters arising under 24 V.S.A. ch. 117.

¶ 11. This analysis is not changed by the fact that 4 V.S.A. § 33 includes the term "exclusive" in describing the family division's jurisdiction over family law proceedings, while 4 V.S.A. § 34 does not include the term "exclusive" in describing the environmental division's

5

jurisdiction over environmental law proceedings. Importantly, 4 V.S.A. § 32—which details that the criminal division has jurisdiction over criminal matters—does not include the term "exclusive jurisdiction." Neither does 4 V.S.A. § 35, which details that the probate division has jurisdiction over probate matters. But—generally speaking—the criminal division does have exclusive jurisdiction over criminal matters and the probate division does have exclusive jurisdiction over probate matters. The exceptions to this general rule are rare, and perhaps the most notable exceptions are found in the jurisdiction of the family division's juvenile proceedings. See, e.g., In re D.K., 2012 VT 23, ¶ 12, 191 Vt. 328, 47 A.3d 347 ("[T]he family division's jurisdiction over juvenile delinquency proceedings is exclusive and takes precedence over any inconsistent criminal law provisions, but normally ends when the juvenile reaches eighteen years of age."); see also 33 V.S.A. § 5101(b) ("The provisions of the juvenile judicial proceedings chapters shall be construed as superseding the provisions of the criminal law of this State to the extent the same are inconsistent with this chapter.").

¶ 12. But landowner further argues that he would unconstitutionally be left without a remedy if he cannot pursue his claims in the civil division; in other words, that he would have no forum for his claims. He contends that he cannot bring a declaratory judgment action against Monkton to contest the UPD in the civil division and that "the Environmental Division regularly dismisses standalone facial challenges to the validity of zoning regulations." He further alleges that this situation violates the Vermont Constitution. See Vt. Const. Ch. I, Art. 4 ("Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character").

¶ 13. We disagree. First, the record does not show that landowner has no remedy in the environmental division. Landowner did not appeal the denial of his permit application and challenge the validity of the statute in the context of that appeal. Second, he did not actually bring a declaratory judgment action in the environmental division, so his presumptions about

6

what the environmental division would do are merely speculative. They do not support his claim that he has no forum to challenge Monkton's compliance with 24 V.S.A. ch. 117 in enacting the UPD.

¶ 14. Building off this argument—which landowner claims is a "constitutional challenge," landowner next argues that even if the Legislature generally divested the civil division of jurisdiction over matters arising under 24 V.S.A. ch. 117, it created an exception for constitutional challenges through 24 V.S.A. § 4472(b). That section reads "[t]he remedy of an interested person with respect to the constitutionality of any one or more of the provisions of any bylaw or municipal plan shall be governed by the Vermont Rules of Civil Procedure with a de novo trial in the Superior Court." 24 V.S.A. § 4472(b). Referring to that section, landowner claims that he properly filed his suit in the civil division because it asserts a constitutional challenge.

¶ 15. But landowner's characterization of his argument regarding 24 V.S.A. ch. 117 as a "constitutional challenge" is incorrect. Instead, this challenge is strictly statutory because it directly asserts that the UPD was enacted in violation of 24 V.S.A. ch. 117 and only secondarily asserts that if it did not violate the statute it would be unconstitutional. Landowner cannot recharacterize what is squarely a statutory claim as a constitutional claim to get it back into the civil division, and his reference to 4 V.S.A. § 4472(b) cannot bring the claim into the jurisdiction of the civil division because that section concerns the "constitutionality of any one or more of the provisions of any bylaw or municipal plan." 4 V.S.A. § 4472(b).

¶ 16. Instead, landowner's statutory challenge is governed by 24 V.S.A. § 4472(a), and our case law concerning the effect of that statute is clear: suits that challenge the procedural enactment of municipal planning laws must be brought before the environmental division. See Harvey v. Town of Waitsfield, 137 Vt. 80, 83, 401 A.2d 900, 901 (1979) ("The claim made here is one of failure to comply with the statutory requirements for adoption of a zoning ordinance,

7

not that any provision of that ordinance is unconstitutional. Failure to follow statutory procedures for adoption is an issue which must be raised under 24 V.S.A. § 4472(a)."), overruled on other grounds by Mohr v. Vill. of Manchester, 161 Vt. 562, 641 A.2d 89 (1993); see also 24 V.S.A. § 4472(a) ("Except as provided in subsections (b) and (c) of this section, the exclusive remedy of an interested person with respect to any decision or act taken, or any failure to act, under this chapter [shall be] . . . appeal to the Environmental Division from an adverse decision"). Because landowner's claim regarding 24 V.S.A. ch. 117 is a statutory claim—not a constitutional claim—it belongs in the environmental division.

## II. Constitutional Challenges

¶ 17. The civil division asserted jurisdiction with respect to landowner's procedural due process claims and dismissed them for failure to state a claim. The trial court concluded that landowner had failed to allege a cognizable property interest protected by the due process clause. On appeal, landowner reiterates his claims to two distinct constitutional property interests that he was denied without due process. First, landowner argues that Monkton deprived him of his property interest in "strict compliance with statutory procedures required in the adoption of zoning regulations." Second, landowner argues that he had a vested interest in continued application of the prior, 1978 regulations, primarily because he had taken substantial steps to develop his property in reliance on those regulations.

### A. Interest in Town's Compliance With Governing Statutes

¶ 18. We now address landowner's procedural due process challenges to the UPD. Landowner first argues that the UPD was improperly enacted and therefore violated his due process rights by infringing on a constitutionally protected property interest. According to landowner, this property interest is "strict compliance with statutory procedures required in the adoption of zoning regulations." The trial court found that no such property interest existed and

that "[h]olding otherwise would permit the untenable result of turning mere violations of state statute into full-blown federal cases." We agree.

¶ 19. To maintain a procedural due process claim properly, a plaintiff must allege facts showing that governmental action deprived plaintiff of a property interest protected by the Fourteenth Amendment. LaFlamme v. Essex Junction Sch. Dist., 170 Vt. 475, 480, 750 A.2d 993, 997 (2000) ("To maintain a procedural due process action against a governmental entity, a plaintiff must show that he was deprived of interests protected by the Fourteenth Amendment."). To do so, the plaintiff must demonstrate more than a mere expectation; rather, he or she must demonstrate that state law has created a legitimate claim of entitlement to the property interest. Ahern v. Mackey, 2007 VT 27, ¶ 11, 181 Vt. 599, 925 A.2d 1011 (2007) (mem.) ("A protected property interest arises where the plaintiff can demonstrate a legitimate claim of entitlement created by state law, rather than a mere unilateral expectation." (quotations and citations omitted)); see also Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) ("Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").

¶ 20. Procedural due process requirements apply only with respect to governmental adjudicative decisions rather than legislative decisions. See Appeal of Stratton Corp., 157 Vt. 436, 442, 600 A.2d 297, 300 (1991) ("Due process requirements apply to the procedures that must be used in reaching agency determinations only if they are adjudicative, rather than rulemaking or legislative, in nature." (citation omitted)). Those who disagree with the adoption of a legislative enactment can pursue relief through the democratic political process. See Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct

9

voice in its adoption. . . . Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.").

¶ 21.    In Vermont, three factors from Appeal of Stratton Corporation determine whether an agency action is legislative rather than adjudicative:

> (1) whether the inquiry is of a generalized nature, rather than having "a specific, individualized focus"; (2) whether the inquiry "focuses on resolving some sort of policy-type question and not merely resolution of factual disputes"; and (3) whether the result is of "prospective applicability and future effect."

Stratton, 157 at 443, 600 A.2d at 301 (quoting 1 C. Koch, Administrative Law & Practice § 2.3, at 61-62 (1985)).  As a general rule, a party may not challenge a legislative enactment through the courts simply because that enactment particularly or disproportionately affects that party. See id. at 445, 600 A.2d at 302 (explaining that landowner's interest "may be different from that of other members of the public, but it has no right to turn a public issue into a private contest.").

¶ 22.    We consistently apply the three Stratton factors to municipal and land use decisions.  In Lake Bomoseen Association v. Vermont Water Resources Board, we applied the factors to a wetlands reclassification by the Vermont Water Resources Board.  2005 VT 79, 178 Vt. 375, 886 A.2d 355.  We found that the reclassification not only implicated "the interests of all the state's citizens and its environment, not simply the interests of owners of property adjacent to the wetland" but also was "policy judgment-based on a consideration and balancing of numerous scientific, economic, and aesthetic factors" and affected "potential future land uses, not past conduct."  See id. ¶ 12.  We therefore found that the reclassification was a legislative action and affirmed the dismissal of a homeowners association due process challenge to it. Likewise, in Parker v. Town of Milton we analyzed a public meeting that had been intended to determine a proposed bridge's impact on the public interest.  169 Vt. 74, 726 A.2d 477 (1998). We determined that the meeting had a legislative function because its purpose was "a policy determination, involving general facts, and having a prospective application."  Id. at 80, 726

A.2d at 482. We therefore found against the opponents of the proposed bridge on their due process claim, which was premised on an allegation that a town official improperly had held their representative out of order at the meeting.

¶ 23.    Applying the three Stratton factors in this case, we find that Monkton's adoption of the UPD was a legislative enactment. First, the UPD affects the entire Monkton community by generally detailing how the Town's land may be developed. It does not pertain specifically to landowner's property. Second, the adoption of the UPD was not concerned with determining underlying facts. Rather, it was a process for developing policy involving the judgment and participation of government bodies and the general public. Third, the adoption of the UPD affects future land use in Monkton, not past land use.

¶ 24.    Because Monkton's adoption of the UPD was a legislative enactment, landowner cannot assert a constitutionally protected property interest in the Town's strict compliance with the statute concerning the adoption of zoning ordinances. We do not address landowner's argument that the procedures used by Monkton failed to meet the requirements of procedural due process.

B.    Interest in Development of Property Under 1978 Regulations

¶ 25.    Landowner finally argues that he personally has a vested, constitutionally protected property interest in the 1978 regulations. He relies on three legal theories to support his argument. First, landowner alleges that he not only applied for but also obtained a permit under the 1978 regulations, and this gives him a vested property interest in those regulations. We dispose of this argument because we are unable to assess it: the alleged permit is neither part of the record nor part of the allegations in landowner's complaint. Second, landowner argues that the UPD "never took effect due to its deficient enactment," so the 1978 regulations remain "in existence." Indeed, landowner specifically applied for a permit on May 2, 2014, on this premise. Although his permit application was designed to conform to the 1978 regulations, it

11

was filed after the UPD became effective. He alleges that he has a constitutionally protected property interest in the 1978 regulations because he applied for a permit under them and was improperly denied.

¶ 26. Finally—and perhaps most important to his claim that he has a vested interest in continued application of the 1978 regulations—landowner argues that he "took substantial action in developing his property and preparing for subdivision, in reliance on the 1978 Regulations" and also "relied on the statutory requirement that he would be provided sufficient notice before adoption of any amendment to the 1978 Regulation." In other words, landowner believes that his intentions and expectations to develop his property under the 1978 Regulations grants him a constitutionally protected property interest in doing so. As landowner points out, federal case law has recognized this interest under certain circumstances. See Gagliardi v. Vill. of Pawling, 18 F.3d 188, 192 (2d Cir. 1994) ("[A] constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner."). So has Colorado law. See Eason v. Bd. of Cty. Comm'rs of Cty. of Boulder, 70 P.3d 600, 605-06 (Colo. App. 2003) ("Colorado law recognizes a protected property interest in a zoning classification when a specifically permitted use becomes securely vested by the landowner's substantial actions taken in reliance, to his or her detriment, on representations and affirmative actions by the government.").

¶ 27. But a closer look at the case law cited by landowner shows that those circumstances are very narrowly prescribed. The federal case involved residential plaintiffs alleging that their municipality had improperly refused to enforce zoning laws against a commercial company and had improperly granted building permits to that same company. The plaintiffs were not entitled to the enforcement of the zoning laws or building permits as they wished. Rather, the court found that "an entitlement to a benefit arises only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit."

12

Gagliardi, 18 F.3d at 192. Likewise, in the Colorado case, the plaintiff "paid for a 'building permit,' purchased and installed the semitrailers, and began his self-storage business" because he "was told by the government that his use was permitted under its interpretation of the zoning ordinance, and he relied, to his detriment, on that assertion." Eason, 70 P.3d at 606. In other words, unlike here, the plaintiff directly relied on a communication from the government authorizing his development. This communication was necessary to a finding that plaintiff had a protected property interest. Our interpretation of the Colorado case is that anything less would not constitute a "legitimate claim of entitlement." See Ahern, 2007 VT 27, ¶ 11.

¶ 28.    Furthermore, Vermont case law is clear: only filing a permit application vests a right in existing regulations, and it does so only in the regulations at the time of filing. See Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181-82, 436 A.2d 760, 761 (1981) (adopting minority rule that filing permit application vests rights against future changes in zoning regulations because rule prevents legal maneuvering, increases certainty of administration, and is fair to applicants); see also In re Keystone Dev. Corp., 2009 VT 13, ¶ 5, 186 Vt. 523, 524, 973 A.2d 1179 (2009) (mem.) (discussing Smith, and describing that "a permit applicant gains a vested right in the governing regulations in existence when a full and complete permit application is filed."). It cannot vest a right in any other regulations. Indeed, we have previously held that a permit application cannot prospectively vest a right in future regulations. See In re Times and Seasons, LLC, 2011 VT 76, ¶ 11, 190 Vt. 163, 27 A.3d 323 (holding that Act 250 "applicant on reconsideration may not simultaneously take advantage of the laws in effect at the time of the initial application and those in effect at the time of the reconsideration application—it is not a two-way street."). Here, the existing regulations at the time of the permit application

were the UPD.  We hold that a permit application cannot retroactively vest a right in prior regulations.[*]

¶ 29.   Moreover, the UPD—not the 1978 regulations—was in effect when landowner applied for the permit.  As previously explained, landowner may disagree with how the UPD was enacted, but procedural due process requirements do not apply.  Therefore, the UPD is the existing law, and landowner has no due process rights in the 1978 regulations.  Although landowner may be particularly affected by the change in zoning regulations, he cannot turn this public issue into a private dispute.

Affirmed.

FOR THE COURT:

_____

Chief Justice

---

[*] Landowner also argues that he was not required to apply for a permit to challenge the enactment of the UPD because he is bringing a facial challenge, not an as-applied one.  This argument is not germane to our analysis of landowner's constitutional challenges because the distinction between a facial challenge and as-applied one has no effect on our holdings.