NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 9

No. 25-AP-248

| | |
|---|---|
| 32 Intervale, LLC et al. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, |
| | Environmental Division |
| | |
| City of Burlington | February Term, 2026 |

Joseph S. McLean, J.

Liam L. Murphy and Samuel Doxzon of MSK Attorneys, Burlington, for Plaintiffs-Appellants.

Kimberlee J. Sturtevant, City Attorney & Corporation Counsel, and Malachi T. Brennan and Rachel L. Seelig of SRH Law PLLC, Burlington, for Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Waples and Drescher, JJ., and Zonay, Supr. J., Specially Assigned


¶ 1.     **EATON, J.**  Seventeen Burlington property owners sought a declaratory judgment from the Environmental Division that the City's recently passed ordinances regulating short-term rentals do not apply to their twenty-two nonowner occupied short-term rental properties because the properties are preexisting nonconforming uses and therefore exempt. The Environmental Division dismissed plaintiffs' complaint for lack of jurisdiction. Because we agree that declaratory relief is inappropriate for plaintiffs' complaint, we affirm.

## I. Facts and Procedural History

¶ 2.     This case involves a complicated factual and procedural history. Summaries of the relevant City ordinances and the relevant prior appeal to this Court are helpful to understanding the issues in the instant appeal.

### A. Relevant City Ordinances

¶ 3.     In 2022, the City of Burlington passed two amendments to its ordinances addressing "short term rentals" in the City. According to plaintiffs, because these amendments imposed "strict new limitations" on short-term rentals and "effectively prohibited short-term rentals in a non-owner occupied property," they thereby "jeopardized plaintiffs' ability to continue lawfully operating their properties due to the threat of fines or closure." We summarize each amendment in detail below.

¶ 4.     The "Comprehensive Development Ordinance Short Term Rental ZA #22-08" (CDO Amendment) went into effect in October 2022, and made the following changes to the City's Comprehensive Development Ordinance. See Burlington Comprehensive Development Ordinance, https://www.burlingtonvt.gov/553/Zoning-Ordinance (incorporating CDO Amendment). The amendment removed the definitions of "Bed and Breakfast," "Hostel," and "Hotel, Inn or Motel." See CDO Amendment, § 13.1.2 [https://perma.cc/YXS2-RC38] (omitting "Bed and Breakfast," "Hostel," and "Hotel, Inn or Motel" definitions). In lieu of these definitions, the CDO Amendment added definitions of "Lodging" and "Short term rental[s]." Id. The CDO Amendment described "Lodging" as "[a]n establishment providing for a fee three or more temporary guest rooms and customary lodging services (such as onsite staffing at all hours, lobby space, and room service), and subject to the Vermont rooms and meals tax." Id. The CDO Amendment further explained that "Lodging may, or may not, be owner occupied" but that "Lodging does not include historic inns or short-term rentals (except when per-building short term

2

rental limits noted in Chapter 18: Minimum Housing Standards of the Burlington Code of Ordinances are exceeded)." Id. The CDO Amendment defined "Short term rental[s]" as

> A dwelling unit that is rented in whole or in part (i.e. renting bedrooms within a unit) to guests for less than thirty (30) consecutive days and for more than 14 days per calendar year" and is subject to the Vermont rooms and meals tax, pursuant to Chapter 18: Minimum Housing Standards of the Burlington Code of Ordinances.

Id. Finally, the CDO Amendment exempted short-term rentals from the requirements of the ordinance, stating that they "shall not be required to obtain a zoning permit" under the ordinance. Id. § 3.1.2(c)(19) [https://perma.cc/EG3D-B7DL].

¶ 5. The "Short Term Minimum Housing Ordinance Amendment 8.24" (STR Amendment) went into effect in August 2022. See also Burlington Code of Ordinances, https://www.codepublishing.com/VT/Burlington/ (incorporating STR Amendment). The STR Amendment made adjustments to Chapter 18, Housing, and Chapter 21, Offenses and Miscellaneous Provisions, of the City's Code of Ordinances. Relevant to the issues in this appeal, this amendment included a near-identical definition of short-term rentals as in the CDO Amendment, but specified that short-term rentals could be either a "Partial Unit," "meaning a room located within a host's primary residence that is used primarily for sleeping purposes by human occupants that contains at least seventy (70) square feet of floor area" or a "Whole Unit, meaning an entire dwelling unit." Burlington Code of Ordinances, Chapter 18, Article I, 18-2 [https://perma.cc/M4PF-YD88]. The STR Amendment also included new requirements for short-term rentals in addition to the preexisting registration requirements for all rental units. Namely, the STR Amendment restricted short-term rental use to four separate situations. Burlington Code of Ordinances, Chapter 18, Article II, 18-15(f) [https://perma.cc/F3CH-YL4D]. Together, these

restrictions prohibited nonhost-occupied short-term rentals in Burlington with few exceptions.[1] Id.

The Burlington Code of Ordinances also warned that "[i]t shall be a violation of the city minimum

housing ordinance for an owner or host of any rental unit within the city to fail to register a rental

unit as required." Burlington Code of Ordinances, Chapter 18, Article II, 18-15(d)

[https://perma.cc/F3CH-YL4D]. The STR Amendment explained that "if a dwelling unit operated

---

[1] Specifically, those situations are that:

In addition to registration requirements for all rental units . . . all short term rentals shall be subject to the following standards:

(1) A host may register their primary residence as one (1) whole unit short term rental or the host may register up to three (3) rooms within their primary residence as a partial unit short term rental.

(2) In buildings or lots with less than five (5) dwelling units, a host may register a dwelling unit within the same building or lot as their primary residence as one (1) whole unit short term rental.

(3) A host may register a dwelling unit that is not within the same building or lot as their primary residence as one (1) whole unit short term rental only if either:

i. the dwelling unit is indicated as a seasonal home by the Burlington Assessor; or

ii. the dwelling unit is within a building with two (2) or more dwelling units and the host rents another dwelling unit within the same building or lot, in excess of any applicable required Inclusionary Units, that meets the affordability criteria of Article 9, Inclusionary Zoning, of the Comprehensive Development Ordinance or is rented to a tenant receiving Federal or State rental assistance.

(4) A host may not register more than one (l) whole unit short term rental. If a host registers one (1) whole unit short term rental that is not their primary residence, they may still rent a partial short term rental in their primary residence. A host who is a tenant may only register a short term rental in their primary residence. A host may not use multiple corporations or other entities to register more than one (1) whole unit short term rental.

Burlington Code of Ordinances, Chapter 18, Article II, 18-15(f).

4

by a host as a noncompliant short-term rental prior to the date in which this ordinance amendment . . . comes into effect, the host may continue to operate their short-term rental until no later than May 31, 2023." STR Amendment, preface.

## B. This Court's Decision in Intervale I

¶ 6.     The instant appeal is not the first time that these same parties have been before this Court regarding the underlying factual situation relevant to this case. We briefly summarize the procedural history and issues considered in that prior case, Intervale I, to contextualize and inform the issues in the instant appeal. See 32 Intervale, LLC v. City of Burlington (Intervale I), No. 24-AP-391, 2025 WL 1621457, at *1 (Vt. June 6, 2025) (unpub. mem.), https://www. vermontjudiciary.org/sites/default/files/documents/eo24-391.pdf.

¶ 7.     As described in more detail below, Intervale I concerned a complaint near-identical to the one at issue in this case. However, its resolution required a separate legal analysis. The crucial issue in Intervale I concerned whether the form of the plaintiffs' request—a declaratory judgment action—imbued the civil division with jurisdiction, when the parties agreed that, absent the declaratory judgment request, the case would fall within the Environmental Division's jurisdiction.

¶ 8.     In July 2023, plaintiffs filed a complaint in the civil division for declaratory judgment against the City of Burlington related to and challenging the City's ordinances. Id. (describing procedural history of plaintiffs' case in the civil division). Amongst other counts, plaintiffs sought a declaration from the civil division that "their [short-term rentals] were a legally permitted preexisting nonconforming use."[2] Id.

_____

[2] Plaintiffs' complaint also included a claim that the City lacked authority to regulate the duration of building occupancy or the terms of rentals through zoning regulation under Chapter 11 of Title 24. Intervale I, 2025 WL 1621457, at *1. The trial court later granted plaintiffs' motion to strike this argument after plaintiffs "bec[ame] aware of 24 V.S.A. § 2291(29), which expressly authorized the City" to regulate short-term rentals. Id.; see 24 V.S.A. § 2291 ("For the purpose of promoting the public health, safety, welfare, and convenience, a town, city, or incorporated village

¶ 9.     In response, the City moved to dismiss plaintiffs' claim on this issue for lack of subject-matter jurisdiction. The civil division granted the City's motion to dismiss. Id. at *2. The court concluded that because nonconforming uses arose from Chapter 117 and because the Environmental Division had sole jurisdiction over matters arising from that chapter, the civil division did not have jurisdiction over the case. Id.; see also 4 V.S.A. § 34 ("The Environmental Division shall have . . . jurisdiction of matters arising under 24 V.S.A. . . . chapter 117."); Gould v. Town of Monkton, 2016 VT 84, ¶ 10, 202 Vt. 535, 150 A.3d 1084 (explaining that "[b]ecause 4 V.S.A. § 34 explicitly grants jurisdiction over matters arising under 24 V.S.A. ch. 117 to the Environmental Division, those matters are clearly an exception to the civil division's general jurisdiction"; and concluding that "[t]he civil division has neither exclusive jurisdiction nor concurrent jurisdiction over matters arising under 24 V.S.A. ch. 117").

¶ 10.     Leading to this Court's decision in Intervale I, plaintiffs appealed the civil division's decision on this issue to this Court, arguing that "the civil division erred in dismissing [the relevant count of] their complaint for lack of jurisdiction." Intervale I, 2025 WL 1621457, at *2. Plaintiffs argued that because the Environmental Division had previously determined that it did not have jurisdiction over stand-alone declaratory judgment actions regarding municipal zoning regulations, the civil division must have jurisdiction by default. Appellants' Brief at 9, Intervale I, 2025 WL 1621457 (No. 24-AP-391), 2025 WL 1839976, at *9; see also 4 V.S.A. § 31(5) (providing that civil division has "jurisdiction to hear and dispose of any other matter brought before the court pursuant to law that is not subject to the jurisdiction of another division").

---

shall have the . . . power[] to regulate by means of an ordinance or bylaw the operation of short-term rentals within the municipality."). In addition, plaintiffs' complaint included a claim that the City lacked authority under chapter 83 of Title 24 to regulate the duration of rentals or require owner occupancy of short-term rentals under the City's minimum housing standard ordinance. Intervale I, 2025 WL 1621457, at *1. The civil division granted the City's motion for summary judgment on this issue "concluding that the City had broad authority to regulate [short-term rentals] under 24 V.S.A. § 2291(29)." Id. at *2. Plaintiffs did not appeal that decision.

In response, the City argued that, regardless of the form of the complaint, because the Environmental Division has "exclusive jurisdiction over matters arising out of chapter 117 of Title 24" and because nonconforming uses are addressed in that chapter under 24 V.S.A. § 4412(7), the Environmental Division had jurisdiction over the claim. Intervale I, 2025 WL 1621457, at *1 (citing Gould, 2016 VT 84); see also Appellee the City of Burlington's Brief at 3-6, Intervale I, 2025 WL 1621457 (No. 24-AP-391), 2024 WL 6048738, at *3-6.

¶ 11. In the subsequent three-Justice decision, Intervale I, this Court rejected the premise of plaintiffs' argument that the Environmental Division would not have "jurisdiction to hear a standalone declaratory judgment action," explaining that our precedent had not addressed that question. Intervale I, 2025 WL 1621457 at *3. Instead, considering that neither party contested that plaintiffs sought "a declaration that plaintiffs' rental units are legally permitted preexisting nonconforming uses under Burlington's zoning ordinance," this Court explained that the issue fell "squarely within the ambit of chapter 117." Id. at *1; see also 24 V.S.A. § 4303(15) (defining nonconforming use); 24 V.S.A. § 4412(7) (requiring municipalities' bylaws to define and provide standards for nonconforming uses). This Court concluded that plaintiffs' claim was "therefore a claim over which the Environmental Division has exclusive jurisdiction, and the civil division properly dismissed it on that basis." Intervale I, 2025 WL 1621457 at *1 (citing Gould, 2016 VT 84, ¶ 16).

¶ 12. This Court was also unpersuaded by plaintiffs' argument that they would be left without remedy for their claim. Even if the Environmental Division did not have jurisdiction over a declaratory-judgment action, we pointed out that "[p]laintiffs [had] not yet sought a permit or determination of non-applicability from the City." Id. at *3. Thus, we affirmed the civil division's dismissal of the relevant count of plaintiffs' complaint. Id.

## C.  Procedural History of the Instant Appeal

¶ 13.  We now turn to the procedural history specific to this appeal.  While the appeal described above in <u>Intervale I</u> was pending, plaintiffs filed a complaint for declaratory judgment in the Environmental Division largely reiterating the count of the complaint described above that plaintiffs had previously filed in the civil division.  Namely, plaintiffs sought a declaratory judgment from the Environmental Division that the use of their properties to rent on a short-term basis "is a preexisting, lawful, nonconforming use that may continue."

¶ 14.  In response, the City moved to dismiss plaintiffs' complaint.  According to the City, "while the Environmental Division has jurisdiction over those issues generally, a declaratory judgment action was not an appropriate vehicle to raise the garden-variety zoning disputes pertaining to plaintiffs' individual properties."  Instead, the City asserted that plaintiffs' complaint "raise[d] ordinary zoning questions respecting plaintiffs' individual properties that must first be addressed under Burlington's Comprehensive Development Ordinance."  Accordingly, the City argued that the complaint was "not ripe" and it was "barred by the exclusive remedy provision of 24 V.S.A. § 4472."  See 24 V.S.A. § 4472 (providing that "exclusive remedy of an interested person with respect to any decision or act taken, or any failure to act, under this chapter . . . shall be the appeal to the appropriate panel under section 4465 of this title, and the appeal to the Environmental Division from an adverse decision upon such appeal").

¶ 15.  Alternatively, the City argued that the Environmental Division did not have jurisdiction over plaintiffs' complaint.  According to the City, the ordinance from which the plaintiffs specifically sought relief—the STR Amendment to Burlington's Code of Ordinances— was not within the Environmental Division's purview.  The City argued that relief under the STR Amendment was unavailable because the STR Amendment "is part of the housing provisions within Burlington's City Code of Ordinances" and unlike the CDO Amendment and other zoning ordinances, "it is enacted pursuant to powers to regulate minimum housing standards and the

miscellaneous police powers of municipalities . . . not under 24 V.S.A. Ch. 117." See 4 V.S.A. § 34 (directing that "the Environmental Division shall have . . . jurisdiction of matters arising under 24 V.S.A. chapter . . . 117").

¶ 16. The Environmental Division granted the City's motion to dismiss for lack of subject-matter jurisdiction. It agreed with both of the City's arguments. The court characterized plaintiffs' claim as one for relief from the STR Amendment only—pointing out that no injury would stem from regulation through the CDO Amendment because that amendment "expressly exempts [short-term rentals] from zoning permit requirements." And, according to the court, because the City's STR Amendment "was adopted pursuant to 24 V.S.A. Chapter 59 and the City's general police powers, as enumerated in 24 V.S.A. Chapters 61 and 123, and Articles 19 through 21," and not Chapter 117, plaintiffs' request did not pertain to an issue "aris[ing] under" the statutes over which the Environmental Division had jurisdiction. Consequently, the Environmental Division concluded that the STR Amendment was outside its jurisdiction.

¶ 17. According to the Environmental Division, this conclusion did not controvert this Court's jurisdictional decision in Intervale I because, in that case, neither the civil division nor this Court had addressed whether the STR Amendment was in fact a zoning ordinance—making this an independent jurisdictional issue. The Environmental Division explained that it generally agreed that the concept of nonconformities is a zoning principle under Chapter 117 over which the Environmental Division has jurisdiction. However, it also explained that the concept of nonconforming uses would only apply if the STR Amendment was a zoning ordinance, which the court determined was not the case. See 24 V.S.A. § 4412 (describing that zoning "bylaws shall define how nonconformities will be addressed").

¶ 18. Next, the Environmental Division concluded that—even assuming that the City intended to regulate short-term rentals through its zoning authority—the court nevertheless did not

9

have jurisdiction over plaintiff's claim. It reasoned that a determination as to whether a use is nonconforming involves substantial fact finding, which is inappropriate for declaratory judgment.

¶ 19. The court also explained that, assuming that the case was within the Environmental Division's jurisdiction, plaintiffs were required to pursue their claims through the required statutory appeals process. See 24 V.S.A. § 4472 ("[T]he exclusive remedy of an interested person with respect to any decision or act taken, or any failure to act, under this chapter or with respect to any one or more of the provisions of any plan or bylaw shall be the appeal to the appropriate panel . . . , and the appeal to the Environmental Division from an adverse decision upon such appeal . . . ."). Ultimately, the court concluded that, even if it had jurisdiction over the substance of plaintiffs' claim, the case was premature because a determination would need to be made by the City's zoning administrator in the first instance and follow the statutory appeals process to the Environmental Division. Accordingly, the Environmental Division granted the City's motion to dismiss.

¶ 20. Plaintiffs timely appealed the Environmental Division's decision to this Court. In this appeal, they argue that the Environmental Division erred when it determined that declaratory judgment was unavailable and that plaintiffs were required to bring their appeals pursuant to the procedure outlined in 24 V.S.A. § 4472. They also argue that the Environmental Division erred when it concluded that it did not have jurisdiction over an issue pertaining to the STR Amendment because the interconnection between the CDO Amendment and STR Amendment placed the issue within the Environmental Division's jurisdiction.

## II. Analysis

### A. Standard of Review

¶ 21. We review de novo the trial court's dismissal for lack of subject-matter jurisdiction. Hous. Our Seniors in Vt. Inc. v. Agency of Com. & Cmty. Dev., 2024 VT 12, ¶ 11, 219 Vt. 80, 315 A.3d 1000. We "assume as true the nonmoving party's factual allegations and accept all

reasonable inferences that may be drawn from those facts." Id. (quotation omitted).  A motion to dismiss may not be granted "unless it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief."  Wool v. Off. of Pro. Regul., 2020 VT 44, ¶ 8, 212 Vt. 305, 236 A.3d 1250.[3]

¶ 22.    We affirm the Environmental Division's conclusion that plaintiffs' claim is premature.[4]  See Garger v. Desroches, 2009 VT 37, ¶ 2, 185 Vt. 634, 974 A.2d 597 (mem.) (explaining that, when considering motions to dismiss, on appeal "we assume that all factual allegations in the complaint are true and resolve all reasonable inferences in favor of the plaintiff.").

---

[3]  In their briefing, both parties agree that the standard of review for this case is de novo. The parties do not raise, and we do not consider, whether this Court should review any aspects of the Environmental Division's decision to decline to make a declaratory judgment under an abuse of discretion standard.  See 10B C. Wright & A. Miller, Federal Practice and Procedure § 2759 (4th ed.) (explaining "it is well settled by a multitude of cases that the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest").

[4]  We do so by assuming without deciding that the issues raised by plaintiffs will fall within the jurisdiction of the Environmental Division.  As explained below and evinced by the Environmental Division's decision, the uncertainty surrounding the appropriate jurisdiction for plaintiffs' claim is directly connected to the fact that the claim is not ripe and the threatened injury is not concrete.  Consequently, for the same reasons that we conclude that the claim is inappropriate for declaratory judgment, we decline to hypothesize regarding the appropriate jurisdiction for plaintiffs' claim at this time.

We further note that, as a general matter, we are not bound by three-justice nonprecedential entry orders.  See V.R.A.P. 33.1.  In addition, in Intervale I, the parties neither raised nor briefed the issue of whether the STR Amendment was a zoning ordinance.  See State v. Eldert, 2015 VT 87, ¶ 21, 199 Vt. 520, 125 A.3d 139 (explaining this Court does "not consider arguments not adequately raised and briefed").  Indeed, in Intervale I, the parties appeared to have agreed that the issue presented was a zoning issue typically within the purview of the Environmental Division. See Appellants' Brief at 2-4, Intervale I, 2025 WL 1621457 (No. 24-AP-391), 2025 WL 1839976, at *2-4 (describing issue as "stand-alone declaratory judgment actions regarding municipal zoning regulations" but lamenting that "[t]he Environmental Division has held that it only has subject matter jurisdiction over a declaratory judgment action as to the validity of municipal zoning regulations when the action is attached to an appeal from a municipal panel decision"); Appellee the City of Burlington's Brief at 3, Intervale I, 2025 WL 1621457 No. 24-AP-391, 2024 WL 6048738, at *3 (describing plaintiffs' request as "a declaration that each of [plaintiffs'] properties are preexisting nonconforming uses under the current zoning ordinance" and arguing that "[t]hese zoning matters are clearly within the exclusive jurisdiction of the Environmental Division").

¶ 23.    In all cases, "[t]he jurisdiction of Vermont courts is limited to deciding actual cases or controversies involving litigants with adverse interests." Doe v. Dep't for Child. & Fams., 2020 VT 79, ¶ 9, 213 Vt. 151, 249 A.3d 665 (quotation omitted).  "A claim is not ripe if the claimed injury is conjectural or hypothetical rather than actual or imminent."  Id. (quotation omitted).

¶ 24.    This "prohibition against advisory opinions applies to actions for a declaratory judgment." Id.  Indeed, a declaratory judgment is meant "to provide a declaration of rights, status, and other legal relations of parties to an actual or justiciable controversy."  Doria v. Univ. of Vt., 156 Vt. 114, 117, 589 A.2d 317, 318 (1991).  However, "[t]he question submitted must not be premature, in that it must be a necessary part of the final disposition of the case to which it pertains" and cannot "be vague or indefinite or subject to varying or imprecise answers."  Wood v. Wood, 135 Vt. 119, 121, 370 A.2d 191, 192 (1977) (citation omitted).  This is because, without a judiciable controversy, "the declaratory judgment can provide no more than an advisory opinion, which our State judiciary does not have the constitutional power to render."  Lace v. Univ. of Vt., 131 Vt. 170, 175, 303 A.2d 475, 478 (1973) (citing In re House Bill 88, 115 Vt. 524, 529, 64 A.2d 169 (1949)).

### B.  Factual Determinations and Declaratory Judgment

¶ 25.    In this case, the Environmental Division appropriately concluded that declaratory judgment was unavailable.  The issue as presented by plaintiffs requires a premature adjudication of questions that would necessarily entangle the court in abstract and convoluted arguments inappropriate for declaratory judgment.  The overlap between yet-to-be-determined factual issues and corresponding questions of interpretation would inevitably lead to "varying or imprecise answers" from the Environmental Division at this stage of the litigation.  Wood, 135 Vt. at 121, 370 A.2d at 193.

¶ 26.    To understand why plaintiffs' complaint is inappropriate for declaratory judgment, it is helpful to explore the complexity of the various assumptions and factual determinations that

plaintiffs' complaint asks of the Environmental Division. The most prominent example is that plaintiffs affirmatively assert in their complaint that they sought "a declaration from" the Environmental Division that the use of their properties "is a preexisting, lawful, nonconforming use that may continue." As explained by the Environmental Division, a determination of whether each plaintiff's use of their property or properties is preexisting, lawful, and nonconforming necessarily requires substantial factual findings regarding each individual property. See 24 V.S.A. § 4303(15) (defining nonconforming use as "use of land that does not conform to the present bylaws but did conform to all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws"); Town of Shelburne v. Kaelin, 136 Vt. 248, 251-52, 388 A.2d 398, 400 (1978) (describing findings required to establish prior nonconforming use including "the use must be in existence prior to and on the day the zoning ordinance is enacted," that "the use must conform to all laws, including prior zoning regulations, in existence just prior to the enactment of the new zoning ordinance," and "the use must be substantial."); 2 P. E. Salkin, Am. Law Zoning § 12:16 (5th ed. 2025) (outlining factual determinations required to establish preexisting use); id. § 12:6 (explaining "substantial evidence" burden "required to prove the factual issues in nonconforming use cases"). The primacy of these factual determinations, alone, is sufficient to conclude that plaintiffs' claim is not appropriate for declaratory judgment. See Doe, 2020 VT 79, ¶ 16 (explaining "factual determination[s]" are "outside the scope of a declaratory-judgment action").[5]

---

[5] In their reply brief, plaintiffs also appear to argue that some of their properties may instead be considered "Lodging" under the CDO Amendment. As described by plaintiffs in their briefing, this analysis would require an in-depth factual analysis of the number of units in each individual property in addition to the specific day-by-day rental history of each property. Specifically, plaintiffs gave the example that "a property providing six dwelling units to rent for more than fourteen days a year, but never for longer than thirty days at a time, would fully qualify as a 'short term rental' under the CDO" while opining that "[e]ach of the property's units would also constitute a 'short term rental' under the [STR Amendment], but the property overall would violate the [STR Amendment's] 'per-building short term limits.' " Because we hold that plaintiffs' complaint is not ripe, we do not address how plaintiffs' properties qualify under the relevant ordinances. Rather, we use this as an example of the significant and material factual determinations required to resolve plaintiffs' complaint.

¶ 27.   Plaintiffs argue, however, that the factual determinations inherent within their request are within the purview of declaratory judgment actions.  See, e.g., Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 246 (1952) ("Of course, the [declaratory judgment] remedy is not to be withheld because it necessitates weighing conflicting evidence of deciding issues of fact as well as law.").  According to plaintiffs, "the Environmental Division would first need to determine the requirements for a property to qualify as a preexisting nonconforming use under the STR Amendment," and the "[r]esolution of this question requires no fact finding."  Plaintiffs, however, concede that "[t]he second step . . . would necessitate determining whether plaintiffs' properties meet those requirements" but explain that "[t]hose facts, however, are necessary to determine whether [plaintiffs'] short-term rental properties constitute a preexisting nonconforming use which could continue to operate as such under the STR Amendments."  Thus, per plaintiffs' own explanation of the process, plaintiffs' complaint is not merely a request for a "declaration of rights, status or other legal relations," it is a request for twenty-two separate fact-dependent inquiries performed by the Environmental Division in the guise of a declaratory judgment.  See 12 V.S.A. § 4712; cf. Abbott Lab'ys v. Gardner, 387 U.S. 136, 149 (1967) (concluding issues presented were appropriate for judicial resolution and reasoning "all parties agree that the issue tendered is a purely legal one"), abrogated on separate ground by Califano v. Sanders, 430 U.S. 99, 104 (1977).

¶ 28.   Furthermore, as the City points out, plaintiffs' complaint states that only "[s]ome [p]laintiffs commenced rentals on a short-term basis (i.e., for less than a month at a time) before October 12, 2022," when the CDO Amendment went into effect.  For the properties that were not in use prior to the CDO Amendment, this may ultimately preclude a nonconforming use designation.  See Kaelin, 136 Vt. at 251-52, 388 A.2d at 400 (explaining findings required to establish prior nonconforming use including "use must be in existence prior to and on the day the zoning ordinance is enacted," "use must conform to all laws, including prior zoning regulations,

14

in existence just prior to the enactment of the new zoning ordinance," and "use must be substantial.") Accordingly, the Environmental Division's decision may well become irrelevant and therefore an advisory opinion for certain plaintiffs or certain properties depending on the outcome of the relevant and required factual determinations requested by plaintiffs in their complaint. See In re Snowstone LLC Stormwater Discharge Authorization, 2021 VT 36, ¶ 28, 214 Vt. 587, 256 A.3d 62 (2021) ("Advisory opinions are those that have no conclusive, legal effect."); see also Burlington Sch. Dist. v. Provost, 2019 VT 87, ¶ 15, 211 Vt. 277, 224 A.3d 841 ("A court faced with a request for declaratory relief must look at the litigation situation as a whole in determining whether it is appropriate to entertain the request for such relief." (quotation omitted)).

## C. Ripeness and Declaratory Judgment

¶ 29. However, even assuming arguendo that the Environmental Division incorrectly interpreted the role of the factual determinations in this case, plaintiffs' complaint remains inappropriate for declaratory judgment because their claim is not ripe.

¶ 30. We recently addressed ripeness considerations in relation to declaratory judgments in Echeverria v. Town of Tunbridge. 2024 VT 47, ¶ 12, 219 Vt. 585, 325 A.3d 98. In that case, the plaintiffs sought "a declaration that the Town of Tunbridge [did] not have the authority to conduct or authorize maintenance or repair activities on legal trails within the town." Id. ¶ 1. The Court considered the policy passed by the town "for maintenance and repair of legal trails," which covered the four legal trails in Tunbridge—two of which were on the plaintiffs' property. Id. ¶¶ 2, 5. The town had also "established a process for private individuals to apply for and receive permission to exercise the town's authority to maintain and repair legal trails." Id. ¶ 5. We explained that the case was ripe, reasoning that the town had "taken concrete steps manifesting its intent to enter onto [the] plaintiffs' property for the purpose of improving the trails." Id. ¶ 19. Specifically, "the [t]own ha[d] formally asserted that it ha[d] authority to enter onto [the] plaintiffs'

15

land for the purpose of maintaining and repairing the legal trails and ha[d] created a procedure for implementing that authority." Id. ¶ 25.

¶ 31. Just as the town in Echeverria passed a policy which indicated its intent to enter onto the plaintiffs' property, in this case, the City has passed two ordinances asserting its authority to regulate plaintiffs' short-term rental properties. Where this case diverges from Echeverria, however, is that the record evinces no "concrete steps" taken by the City to "manifest its intent" to enforce the ordinances in any specific way. See id. ¶ 19. In Echeverria, we explained that, among other considerations, the town's steps beyond merely passing its policy—creating a separate procedure to implement that authority—allowed the plaintiffs to "demonstrate a sufficiently concrete threat of physical invasion" on their property.[6] Id.

¶ 32. Here, plaintiffs assert that the City has "threatened enforcement against [them]." However, even taking this in the light most favorable to plaintiffs, without more information, the form of that enforcement remains uncertain. Cf. Dernier v. Mortg. Network, Inc., 2013 VT 96, ¶ 39, 195 Vt. 113, 87 A.3d 465 (specifying impending injury would be in form of "foreclosure proceedings against plaintiff"); Gifford Mem'l Hosp. v. Town of Randolph, 119 Vt. 66, 71, 118 A.2d 480, 483 (1955) (explaining case was ripe because town would be expected to create injury by "proceed[ing] to collect the tax if it is not paid when due"). Indeed, the jurisdictional question raised by the City and affirmed by the Environmental Division stems from uncertainty concerning how and whether the City will enforce these ordinances against plaintiffs or other short-term rental property owners. See Wood, 135 Vt. at 121, 370 A.2d at 193 ("The question submitted must not be premature" and cannot "be vague or indefinite or subject to varying or imprecise answers"). As

---

[6] In her concurrence in Echeverria, Justice Waples described that, "to the extent that th[e] case [was] ripe for adjudication . . . its circumstances represent[ed] the outer boundary of what this Court can consider to be justiciable for the purposes of maintaining subject matter jurisdiction." 2025 VT 47, ¶ 28 (Waples, J., concurring).

16

the Environmental Division articulated, "it would be premature to interpret the CDO, as amended, to incorporate the STR [Amendment] and individually declare whether each of [p]laintiffs' properties are exempt from potential enforcement as preexisting nonconforming uses" because, amongst other reasons, the City has not pursued enforcement "of the STR [Amendment] through the CDO" or otherwise, nor have any property owners sought an opinion from the zoning administrator in the first instance.

¶ 33. In other words, the issues in Echeverria and other cases cited above were considered ripe because the Court could readily understand the path to the plaintiffs' injury: "the parties' positions and interests were concrete, clear, and adverse." Negots. Comm. of Caledonia Cent. Supervisory Union v. Caledonia Cent. Educ. Ass'n, 2018 VT 18, ¶ 9, 206 Vt. 636, 184 A.3d 236. In clear contrast, plaintiffs' complaint in this case outlines a far less concrete injury.[7] Furthermore, it is not evident that the parties are adverse regarding plaintiffs' properties' nonconforming-use designations. Plaintiffs argue that their properties are nonconforming uses and the City has not contested that this may be so. Indeed, the City argues that the instant case may become moot in the event of such a designation by the zoning administrator.

¶ 34. Our decision in Killington, Ltd. v. State, is instructive. 164 Vt. 253, 260-61, 668 A.2d 1278, 1284 (1995). In the context of a regulatory takings claim, in Killington, we explained that "[z]oning regulations may be challenged as a taking either on their face or as applied to an owner's property." Id. A claim's ripeness directly correlates with the form of the challenge. "A facial challenge is ripe for judicial review upon the adoption of the regulation." Id. at 261, 668 A.2d at 1283. Whereas "[w]hen the regulation is challenged as applied to the property, the focus of the claim is on how the administration of the regulation impacts the property." Id. at 261, 668

---

[7] At various points in their brief, plaintiffs speculate that the continued use of their properties will expose them to fines and possible permit denials under the CDO Amendment due to certain properties potentially being classified as "Lodging," and plaintiffs' complaint also mentions separate permit denials, presumably under the STR Amendment.

A.2d at 1283. Inherent within this distinction is that ripeness in cases which directly implicate the method and means of enforcement require the court to be able to consider the steps taken by the City in that regard. As we explained, " '[a] court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes.' " Id. at 262, 668 A.2d at 1285 (quoting MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 348 (1986)). Indeed, in Killington, we articulated that without more concrete information about the impending enforcement "the superior court would have to speculate on the nature and extent" of the taking because "there has been no final determination on those issues." Id. at 262, 668 A.2d at 1285. The same is true here. As the Environmental Division articulated, the City has yet to initiate enforcement actions under its zoning authority against plaintiffs' properties and the lack of certainty concerning how that enforcement would be effectuated contributes to both ripeness and jurisdictional issues.[8]

¶ 35. Indeed, the instant case is not a facial challenge to either the CDO Amendment or the STR Amendment. In fact, as described above, plaintiffs did not prevail on their claim that "the City lacked authority under chapter 83 of Title 24 to regulate the duration of rentals or require owner occupancy of [short-term rentals] under the minimum housing standards ordinance" because the civil division concluded "the City had broad authority to regulate [short-term rentals] under 24 V.S.A. § 2291(29)." Intervale I, 2025 WL 1621457 at *1. Instead, plaintiffs' instant complaint relies on the possibility of enforcement actions against plaintiffs' individual properties. Accordingly, it requires the Environmental Division to issue an opinion either speculating about

---

[8] We note that plaintiffs assert in their complaint that some individual properties have applied for minimum housing standards and code permits but have been denied because of the use of the property as a short-term rental. Plaintiffs have provided no justification why they have not or did not pursue the appeal process outlined in the Burlington Code of Ordinances. See Burlington Code of Ordinances, Chapter 18, § 18-48 ("It shall be the duty of the housing board of review to hold open hearings on any request for a hearing filed by a party aggrieved by any action of the inspector."). Furthermore, the City has not argued that plaintiffs were required to do so.

the nature of enforcement from the City or, alternatively, instructing the City how it should interpret and enforce those ordinances. This conclusion would ostensibly be used by plaintiffs to ask the Environmental Division to determine that a nonconforming-use designation for their properties would be an available remedy in the face of that enforcement by the City pursuant to the CDO Amendment or the STR Amendment or both. Finally, as explained above, the availability of that remedy for plaintiffs also relies on the fact-dependent nonconforming use designation for each property. This speculation precludes the case from being ripe. Cf. Killington, 164 Vt. at 261, 668 A.2d at 1283 ("When the regulation is challenged as applied to the property, the focus of the claim is on how the administration of the regulation impacts the property.").

¶ 36.    It is true that the U.S. Supreme Court has recognized that "[t]he difference between an abstract question and a 'controversy' contemplated by [a request for declaratory judgment] is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). As described above, however, this case certainly falls outside of what could reasonably be considered ripe for the purpose of any declaratory-judgment action.

D.  Exclusive Remedy Provision

¶ 37.    Because we conclude that this case is not ripe and therefore not appropriate for declaratory judgment, we do not reach the argument concerning whether the "exclusive remedy" provision in 24 V.S.A. § 4472 bars plaintiffs' claim. We note, however, that federal courts have frequently articulated that a court "in the exercise of the discretion that it always has in determining whether to give a declaratory judgment, properly may refuse declaratory relief if the alternative remedy is better or more effective." 10B C. Wright & A. Miller, Federal Practice and Procedure § 2758 (4th ed.); see also Echeverria, 2024 VT 47, ¶ 18 ("A court faced with a request for declaratory relief must look at the litigation situation as a whole in determining whether it is appropriate to entertain the request for such relief." (quotation omitted)). Here, the Environmental

Division considered the alternative remedy available to plaintiffs in § 4472(a) and reasoned that, "[b]y going through the statutory appeals process" outlined in § 4472, "[p]laintiffs would have multiple opportunities to raise any appropriate defenses to enforcement of the STR [Amendment] through zoning mechanisms should the City assert that they may enforce the STR [Amendment] through zoning processes."  See Levinsky v. State, 146 Vt. 316, 317, 503 A.2d 534, 536 (per curiam) ("A declaratory judgment action is not necessarily barred by the existence of another remedy.  However, where an alternate form of relief is available, the court, in the exercise of its discretion, may determine that the granting of declaratory relief is inappropriate.").  Thus, as with the reasoning outlined above, the appropriateness of the remedy in § 4472 supports the Environmental Division's decision to deny declaratory judgment in this case in the face of an appropriate alternative remedy.[9]

III.  Conclusion

¶ 38.    Finally, as we articulated in Intervale I, we continue to be unpersuaded by plaintiffs' argument that they would be without recourse—and that we should allow them to "reopen" the matter before the Civil Division—if we affirm the Environmental Division's decision to dismiss plaintiffs' complaint.  We reemphasize here that "[p]laintiffs have not yet sought a permit or determination of non-applicability from the City."  Intervale I, 2025 WL 1621457, at *3.  The record demonstrates that this observation remains true today.  As indicated by the Environmental Division, plaintiffs may also wait to receive a notice of violation from the City, which would provide clear opportunity to raise any defenses on appeal.  Alternatively, they may challenge any

---

[9]   At oral argument, plaintiffs opined that the appeal process outlined in § 4472 would not be an alternative remedy because the Environmental Division would dismiss any appeal under its prior reasoning that it lacked jurisdiction.  We do not agree with plaintiffs' interpretation of the Environmental Division's decision.  The Environmental Division articulated that "[b]y seeking [non-applicability] determinations from the City, [p]laintiffs would then have a better understanding of whether the City intends to regulate [short-term rentals] through zoning."  The statement suggests that if the City were to make the choice to regulate their short-term rentals through zoning, the Environmental Division would entertain the claim.

20

denials of permits under the STR Amendment pursuant to the appeals process outlined within the City's Code of Ordinances.  Finally, plaintiffs may voluntarily comply with the STR Amendment. The instant case, however, was appropriately dismissed.

     Affirmed.

FOR THE COURT:

_____

Associate Justice